557 F.2d 338
 195 U.S.P.Q. 466
 WEST & COMPANY, INC., Plaintiff-Appellant,
v.
ARICA INSTITUTE, INC., Defendant-Appellee,
v.
WEST & COMPANY, INC., Steven West, Steven West d/b/a
MacDonald-Winchester Publishers, and Jonathan
Advertising, Inc., Counterclaim
Defendants-Appellants.
 No. 696, Docket 76-7513.
 United States Court of Appeals,
Second Circuit.
 Argued March 30, 1977.
Decided June 8, 1977.
 
 Arthur W. Baily, New York City (Michael C. Duban, New York City, of counsel), for plaintiff-appellant and counterclaim defendants-appellants.
 David H. T. Kane, New York City (Siegrun D. Kane, Virginia R. Richard and Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, of counsel), for defendant-appellee.
 Before LUMBARD, MANSFIELD and GURFEIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 This is an appeal from a judgment of the District Court for the Southern District of New York (Stewart, D. J.) dismissing the complaint and granting injunctive relief on the defendant's counterclaim. The injunction was based on the district court's determination that plaintiff had infringed defendant's service mark.[1] It held that the mark was "descriptive," but was, nevertheless, entitled to protection because it had acquired "secondary meaning." We hold that the mark is not merely "descriptive" but is sufficiently fanciful to be a valid mark. We therefore affirm without reaching the issue of whether the mark had acquired secondary meaning.
 
 
 2
 * Appellant West & Co. ("West") commenced an action in November, 1975 against appellee Arica Institute, Inc. ("Arica") in New York State Supreme Court for unfair competition and misappropriation of its service mark "psycho-calisthenics." Arica removed the action to the federal court and counterclaimed for service-mark infringement of its mark "psychocalisthenics" under the Lanham Act, 15 U.S.C. §§ 1121, 1125(a), and also for unfair competition.[2]
 
 
 3
 Shortly thereafter, Arica moved for a preliminary injunction on its counterclaim. It sought to restrain West from distributing its recently published book, Psycho-Calisthenics, and from using the term "psycho-calisthenics" in any other manner. After an evidentiary hearing, Judge Gagliardi denied the motion. He held that the mark did not indicate origin, but was "descriptive" because "it refers generically to the general class of physical and mental exercises which are intended to affect mental processes." He also held that "psychocalisthenics," as a merely descriptive term, had not achieved the necessary "secondary meaning" required to become a valid mark. See 15 U.S.C. § 1052(f); W. E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 661 (2d Cir. 1970).
 
 
 4
 A trial on the merits was held before Judge Stewart sitting without a jury. He reaffirmed the previous ruling that the term was descriptive, but found that it had acquired the necessary secondary meaning to make it a valid mark. Having concluded that Arica's "psychocalisthenics" mark was valid, he then held that West's use of the term "psycho-calisthenics" was an infringement of the Arica mark.
 
 
 5
 The district court permanently enjoined West from using the term in the promotion or advertising of its service or products. It also ordered West to cease distributing any books, literature, cassettes or other materials containing the term in its label or title and to withdraw all books or materials in circulation which had not yet been sold. The court refused, however, to award either monetary damages or attorneys' fees. The parties have stipulated to the withdrawal of Arica's cross-appeal on this issue. We consider only West's appeal.
 
 II
 
 6
 The facts found by the district court are apparently not in dispute.
 
 
 7
 Appellee Arica is a nonprofit corporation organized in 1971 by a group of people who had studied a "system for personal development" under a South American named Oscar Ichazo. The stated purpose of Arica is "to introduce into our contemporary American culture an integrated system of personal development centered at the physical, emotional, mental and spiritual levels with the aim of developing totally integrated, rounded human beings."
 
 
 8
 Arica created training courses ranging from three hours to three months and gave them in centers or "houses" throughout the United States and Europe. It also presented them or demonstrations of them at conferences, hospitals, schools and prisons. Arica claims that 4,000 people have participated in its 40-day training program alone, with another 50,000 people attending its other courses or demonstrations.
 
 
 9
 One of the techniques used by Arica in all of its courses is a series of physical exercises. These exercises are related to yoga exercises but are distinct in that they require continual motion. Arica's brochures describe the exercises as "a combination of various yoga systems, dance and calisthenics." An Arica trainer testified that "psychocalisthenics is a combination of movements coordinated with breathing that produces specific physical results that then generates (sic) specific intellectual and emotional results."
 
 
 10
 During the first two years after its formation Arica named these exercises "gym." Then in June, 1973, Arica changed the name to "psychocalisthenics." (This, as will be seen, was over two years before West's first public use of his term.) The origin of the term "psychocalisthenics" is not known, but some people attribute it to the South American Ichazo.
 
 
 11
 Since June, 1973, Arica had used "psychocalisthenics" continually in its brochures, advertisements and promotion of its courses, and has used it also as the title of its cable television show. It has spent approximately $300,000 in this effort.
 
 
 12
 In the summer of 1972, Steven West, who had previously become involved in the study of "humanistic psychology," decided to name a series of mental exercises which he had been developing "psycho-calisthenics." Appellant claims that Steven West coined the term himself. At first he used it only in meetings attended by a few friends during the course of that summer. Later, in order to protect the term as a name for the book he was writing, he attempted to register it as a service mark. Claiming a first use in October, 1974, West obtained a New York State service mark in November, 1974. His federal application was rejected in August, 1975, after the examiner decided that the term was "merely descriptive." West did not pursue the application.
 
 
 13
 Before 1975 West did not use the term publicly either in literature or advertisements, although he had used the term in drafts of his manuscript. In October, 1975, he began to use it extensively in the advertisements for his book. In addition, West had made three cassette programs for persons troubled by their weight, smoking habits, and sexuality. He used "psycho-calisthenics" in the title and promotion of these cassettes. In the spring of 1975 West had attended an Arica demonstration and therefore was aware of Arica's use of "psychocalisthenics" before his first public use of "psycho-calisthenics."
 
 
 14
 The district court found that Arica had attempted to maintain the exclusive use of its mark through the supervision and policing of those who taught its courses. As noted, West first began his extensive publicity using the "psycho-calisthenics" mark in October, 1975. Arica served him with a notice of infringement that November. During the pendency of this action both parties have continued to use their respective terms in connection with their products and services. West has also used the federal trademark registration symbol, 15 U.S.C. § 1111, although he has no such registration. Arica obtained federal registration in July, 1976.[3]
 
 III
 
 15
 Appellant West's principal claim on appeal is that it cannot be held to have infringed because the "psychocalisthenics" service mark is invalid.[4] It contends that the mark is merely descriptive and has not acquired the necessary secondary meaning to make it a valid mark.
 
 
 16
 At the extremes of trademark protection are generic terms which can claim no protection, and arbitrary or fanciful terms which may always claim protection. See e. g., Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9, 11 (2d Cir. 1976). In the broad middle ground where most of the trademark battles are fought are the terms which are primarily descriptive and those which are only suggestive. The distinction, while not always readily apparent,[5] is important, because those which are descriptive may obtain registration only if they have acquired secondary meaning, while suggestive terms are entitled to registration without such proof. See Abercrombie & Fitch Co. v. Hunting World, Inc., supra, 537 F.2d at 9-11; W. E. Bassett Co. v. Revlon, Inc., supra, 435 F.2d at 661; 3 R. Callmann, The Law of Unfair Competition, Trademarks and Monopolies, § 70.1 (3d ed. 1976).
 
 
 17
 One of the more useful standards for distinguishing between those terms which are merely descriptive and those which are suggestive is that used by Judge Weinfeld in Stix Products, Inc. v. United Merchants & Mfrs., Inc., 295 F.Supp. 479, 488 (S.D.N.Y. 1968):
 
 
 18
 A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.
 
 
 19
 In this case, Arica, because of the registration of its mark by the Patent and Trademark Office without requiring proof of secondary meaning, starts out with the "rebuttable presumption that (its) mark is suggestive or arbitrary or fanciful rather than merely descriptive." Abercrombie & Fitch Co. v. Hunting World, Inc., supra, 537 F.2d at 11. Accord, Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp., 259 F.2d 314, 316 (2d Cir. 1958).[6]
 
 
 20
 Even without this presumption, however, we think that the term "psychocalisthenics" as used here is suggestive rather than merely descriptive. It is an odd and unusual term which suggests a number of things but which does not describe any one thing in particular. It could indicate a system of purely mental exercises such as West's, a system of physical exercises such as Arica's which is designed to create specific mental, emotional and physical results, or even a traditional exercise program merely designed to improve mental fitness and alertness. Indeed, the very fact that both West and Arica use the same term to denominate their two very different programs undercuts the claim that the term is merely descriptive.
 
 
 21
 Nor is our conclusion affected if we focus on Arica's specific use of the term.[7] While "psychocalisthenics," as noted, bears some relationship to the physical exercises conducted by Arica, this would be expected of any suggestive mark, and, in fact, would be one of the purposes of the mark. But we cannot say that "psychocalisthenics" merely describes "a combination of various yoga systems, dance and calisthenics" which require continual motion and are designed to produce specific mental, emotional and spiritual results. We think the term does "requir(e) imagination, thought and perception to reach a conclusion as to the nature of (the services)." We conclude that the term is suggestive rather than descriptive and therefore valid without the need for proof of secondary meaning.[8] Having determined that the mark is valid, it follows that, as the district court found, the Arica mark was infringed.
 
 
 22
 The final point on appeal is West's contention that the district court injunction was too broad. Its principal concern appears to be that it is not allowed to use the term "psycho-calisthenics" in any manner. We think that the district court was correct in its determination that this prohibition is necessary to protect Arica's mark.[9]
 
 
 23
 For the foregoing reasons the judgment of the district court is affirmed.
 
 
 
 [1]
 Under the Lanham Act a "service mark" means a word, name or symbol used in the sale or advertising of services to identify the services of one person and to distinguish them from the services of others. A trademark is similar but is used to identify goods or products. 15 U.S.C. § 1127. Both have been said to be governed by identical standards. See Boston Professional Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc., 510 F.2d 1004, 1009 (5th Cir. 1975)
 
 
 [2]
 Arica's counterclaim also named as defendants certain parties related to or in privity with West. These were Steven West, Steven West d/b/a MacDonald-Winchester Publishers, and Jonathan Advertising, Inc
 
 
 [3]
 The Patent and Trademark Office initially rejected Arica's application as it had West's. Arica pursued the application and subsequently received registration without proof of secondary meaning
 
 
 [4]
 West's attack on the validity of the mark "psychocalisthenics" places it in the unusual position of attacking the validity of a term which it had itself claimed to be valid in state and federal trademark applications, and upon whose validity the very complaint in this action is based. Moreover, during the pendency of this litigation West continued to claim trademark protection for its term through the false use of the federal registration symbol
 Arica claims that under these circumstances, at least as between these parties, West should not be able to claim that the mark is invalid. Because of our determination below that the mark is valid, we need not reach this claim.
 
 
 [5]
 It is difficult to perceive a clear-cut distinction in the case law between those terms which have been held to be descriptive and those suggestive. For a list of terms which have been held to be suggestive and descriptive, see 3 R. Callmann, The Law of Unfair Competition, Trademarks and Monopolies, §§ 71.1(a), 71.2 (3d ed. 1976) ("Callmann"). Some terms have been held to be both. Compare France Milling Co. v. Washburn Crosby Co., 7 F.2d 304 (2d Cir. 1925) with Taylor v. Gillies, 59 N.Y. 331 (1874) ("Gold Medal")
 
 
 [6]
 We disagree with the district court's conclusion that because the mark was originally rejected by the Patent and Trademark Office, see note 3, supra, and because West's counsel announced his intention to contest the registration, the rebuttable presumption is not established here. However, as we note infra, we need not rely upon that presumption to reach our conclusion that the mark is not "merely descriptive."
 
 
 [7]
 Of course, the fact that "psychocalisthenics" might be suggestive in connection with West's or some other program would not help Arica if its use of the term in connection with its exercises was merely descriptive. A term may be suggestive or fanciful in one context and descriptive in another. See Callmann, supra note 5 at § 71.1(e)
 
 
 [8]
 We consequently do not reach the question of whether Arica's "psychocalisthenics" had acquired secondary meaning
 
 
 [9]
 The district court also required destruction of the infringing materials and the maintenance of records and an accounting by West of its efforts to comply with the injunction. Considering West's continued use of the term after notice of Arica's previous public use and its continued false use of the federal registration symbol, even during the pendency of this action, we think these requirements were within the discretion of the district court