CRAZY EDDIE, INC., Plaintiff,

v.

LOIS PITTS GERSHON, INC., Lafayette Stores, Circuit City, Stores, Inc., et al., Defendants.

No. 84 Civ. 8689 (MJL).

United States District Court,
S.D. New York.

Dec. 21, 1984.

538

Solomon Antar, Brooklyn, N.Y. by Ezra Sutton, P.A., Woodbridge, N.J., for plaintiff.

Stein, Zauderer, Ellenhorn, Friedman & Kaplan, by Mark C. Zauderer, Harry Frischer, New York City, for defendant Lafayette.

Hall, Dickler, Lawler, Kent & Friedman, by Joseph Chase, Douglas Wood, New York City, for defendant Lois Pitts Gershon.

Ronald Guttman, New York City, for defendant CBS.

Cahill, Gordon & Reindel, by Roy L. Regozin, W. Drew Kastner, New York City, for defendant NBC.

LOWE, District Judge.

Plaintiff by order to show cause, seeks a temporary restraining order ("TRO") from this Court restraining the defendants[1] from distributing, televising, displaying or otherwise publicizing certain T.V. commercials on behalf of defendant Lafayette Stores, Circuit City Stores, Inc., hereinafter ("Lafayette") which mention the trade name Crazy Eddie in a derogatory or disparaging manner.

Plaintiff is the owner of a registered trademark for the service mark Crazy Eddie as applied to retail and distributorship services in the field of audio and video electronic equipment.[2]

Defendant Lafayette owns retail stores in the New York—New Jersey metropolitan area which sell products in direct competition with Crazy Eddie stores.

Plaintiff contends that the commercials use the service mark and trade name CRAZY EDDIE to such an extent that it dominates the use by defendant of its trade name Lafayette and constitutes trademark infringement, false description, false designation of origin, and false and confusing advertising. Plaintiff also alleges that defendant's TV commercials include a number of statements which are false, misleading, disparaging, derogatory, and defamatory, and which constitute trade disparagement and unfair competition.

Plaintiff alleges a claim under 15 U.S.C. § 1114 (Section 32(1)(a) of the Lanham Act) for trademark infringement; 15, U.S.C. § 1125(a) (Section 43(a) of the Lanham Act) for false description and false designation of origin; trade disparagement and unfair competition under the common law of New York and New Jersey and trademark dilution under Section 368–d of the New York General Business Law. N.Y.G.B.L. § 368–d (McKinney 1984).

Plaintiff claims that the commercials[3] create a reasonable likelihood that purchasers will be confused as to their sponsorship. More particularly plaintiff alleges that the commercial entitled "The Confessions of Crazy Eddie" (Ex. 4A) shows a person, who looks like Crazy Eddie, is dressed like him and uses his mannerisms, sitting in a confessional booth making derogatory statements concerning Crazy Eddie's business practices.

Plaintiff offered evidence at the TRO hearing that it has received a number of phone calls from television viewers complaining that "The Confessions of Crazy Eddie" commercial is derogatory of the Catholic Church. The complaining custom-

---

1. Lois Pitts Gershon, Inc. is the advertising agency that produced the commercials; Lafayette Stores, Circuit City is a retail seller of products in direct competition with plaintiff; the six media defendants were offered, and some accepted the commercials for broadcasting to the public.

2. Plaintiff alleges in his complaint, ¶ 18:

   Plaintiff's trademark, service mark and trade name CRAZY EDDIE have been used continuously since 1969 to the present time in interstate commerce as a trade name on retail stores and as a trademark on merchandise, and as a result of plaintiff's extensive advertising and sales under the mark CRAZY EDDIE, plaintiff's mark has developed a valuable goodwill and reputation, and the mark CRAZY EDDIE identifies plaintiff and its licensees as the source of retail store services and products under the famous mark CRAZY EDDIE.

For television advertising purposes, plaintiff uses a person with distinctive type dress and mannerisms to advertise his product. This person symbolizes the Crazy Eddie mark to the television viewing public.

3. The commercials are identified in the record as Exhibit 4:
   A. Confessions of Crazy Eddie;
   B. Why Haggle;
   C. World's Greatest Haggler;
   D. King of Hagglers;
   E. The Santa Ad;
   F. Great Hagglers of History;
   G. Worst Hagglers of History;
   H. Clearance Sale;
   I. President's Day Sale; and
   J. Grand Opening Sale.

ers are confused in that they attributed sponsorship of the commercial to Crazy Eddie.

Plaintiff argued that the balance of the commercials (Exhibits 4B–J) were offending because they falsely advertise that Crazy Eddie's prices are the lowest in town only if the customer "haggles" with the salesman; that Crazy Eddie has a coded price system [4] and that Lafayette has ten times the buying power of plaintiff.

The non-media defendants argued that the statements concerning the coded price system and Lafayette's buying power are true. Furthermore the characterization of plaintiff's selling practice as "haggling" and the use of the confessional scene are not actionable but legitimate parody.

### Discussion

■■■■ A TRO may be issued only for a short period of time and upon a showing of its necessity to prevent further injury until the parties have had adequate time to prepare for a hearing on the underlying application for a Preliminary Injunction. A court must weigh the probability of irreparable harm, probability of success on the merits and balance the interests of the parties. Only if the plaintiff is able to show serious harm which cannot be undone and for which money damages are an inadequate remedy should the court exercise its equitable power to disturb the *status quo pendente lite.* *Coca Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312 (2d Cir. 1982).

Plaintiff pleads his federal claims under both Sections 32(1)(a) (First Claim) and 43(a) (Second Claim). On oral argument plaintiff failed to distinguish between the two sections [5] and in post hearing argument, placed its primary claim to relief upon the holding in *Dallas Cowboys Cheer-*

*leaders, Inc. v. Pussycat Cinema Ltd.,* 604 F.2d 200 (2d Cir.1979) a case decided under Section 43(a). Defendants, in rebutting plaintiff's Section 43(a) argument, urged this Court to deny plaintiff relief on the ground that plaintiff was complaining of defendant Lafayette's advertisements concerning plaintiff's mark rather than defendant's own mark. They contended that such an allegation is not actionable under 43(a), *Fur Information and Fashion Counsel Inc. v. E.F. Timme and Sons Inc.,* 501 F.2d 1048, *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974).[6]

■■■ In examining plaintiff's complaint, it is apparent that plaintiff pleads that it is the owner of a registered service mark, "Crazy Eddie". An owner of a registered mark has a cause of action under 15 U.S.C. § 1114 (32(1)(a)) for deception by another in the use of the mark. Section 32(1)(a) provides:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to.... advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive shall be liable in a civil action....

---

**4.** Under such a system a price is placed on the tagged item and beneath the price is a coded number. The coded number represents the price below which a salesman may not go in negotiating with a customer. (Tr. December 4, 1984, at pp. 20–21).

**5.** Transcript of Hearing, December 4, 1984, pp. 2–9; transcript of December 10, 1984 hearing pp. 85–90.

**6.** In *Fur Information,* the Circuit held that under Section 43(a) the claim of false description or representation must be made concerning defendant's goods.

■ A service mark is defined in 15 U.S.C. § 1127 as "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." The same standards are used to determine whether a trademark or service mark has been infringed, *West & Co., Inc. v. Arica Institute, Inc.*, 557 F.2d 338, 340 n. 1 (2d Cir. 1977), with the distinction noted, that a service mark is used as an identification mark which performs the same function in the selling and advertising of services that a trademark performs in respect of goods. 3 Callman, *Unfair Competition, Trademarks and Monopolies*, 68.1 at 71.

Plaintiff has proven the following elements of a claim under Section 32(1)(a) by presenting the videotapes:

1. The videotapes were used in commerce;

2. They are a copy or colorable imitation of the Crazy Eddie service mark;

3. They are used in connection with advertising.

Plaintiff, by bringing this action has claimed that the videotapes were made without his consent, therefore the only remaining element is whether they are likely to cause confusion, mistake or to deceive.

In *Coca-Cola Co. v. Tropicana Products, Inc.*, 690 F.2d 312, 316–317 (2d Cir. 1982) Judge Cardamone, writing for the Court, explained that a Lanham Act plaintiff must submit proof which provides a reasonable basis for the belief that he will be harmed by the false advertising. Citing prior cases in this Circuit, the Court stated that where products are in head-to-head competition "sales of plaintiff's products would probably be harmed if the competing products' advertising tended to mislead consumers" as to their all-around superiority or by misdescription. *Id.* The Court concluded that if consumers were misled by Tropicana's commercial, plaintiff would lose customers and thereby suffer irreparable injury.

■ In the instant case, plaintiff offered evidence of consumer's calling to complain about the use of the confessional in Exhibit 4A and expressing indignation that Crazy Eddie would put a religious symbol to commercial use. Although defendants objected to the hearsay nature of the evidence and the small size of the sample, this Court finds that it is sufficient for a TRO hearing because plaintiff, by the very nature of the application, must act quickly to restrain the allegedly offending commercial. This Court finds that the manner in which the complaints were received provides a circumstantial guaranty of trustworthiness. In any event, plaintiff, at the hearing on the preliminary injunction, will be required to sustain his claim of consumer perception of the commercial by way of market surveys or other evidence.

The videotape "Confessions of Crazy Eddie" (Ex. 4A) runs about thirty (30) second, however the alleged offending portion is less than ten (10) second. The commercial begins with large white letters on a blue background—"Confessions of Crazy Eddie" there is background music and a voice over—"Lafayette presents the confessions of Crazy Eddie": The scene fades and a person who looks like, is dressed like and who imitates the mannerisms of Crazy Eddie appears on the screen, sitting in a confessional booth, apparently confessing his commercial sins. The video then fades to other subjects.

This Court is of the opinion that the short duration of the confessional scene makes a significant visual impact, especially when coupled with the large print— "Confessions of Crazy Eddie"; this visual image is not lessened or explained by the almost imperceptible voice over "Lafayette Presents".

■ This Court finds for purposes of granting a TRO that plaintiff has shown irreparable harm and likelihood of success on the merits. A significant number of the viewing public is likely to be confused and deceived into believing that plaintiff is exploiting the confessional booth for commercial purposes thereby causing plaintiff harm in his business. This Court restrains

defendants' use of Exhibit 4A pending the hearing on the preliminary injunction.

As to the other advertisements, plaintiff offered no evidence of customer confusion. The claims of infringement were based on the usual uncomplimentary comparisons between products, prices and sponsors that have become prevalent in the jungle of comparative advertising.

■■■■ A trademark owner has a protectable property right only insofar as is necessary to prevent consumer confusion and deception. Advertisements must be judged in the context of the marketplace and particularly in the context in which they appear. Television viewers are less likely to be confused or deceived by pejorative comparisons by competitors, who clearly present themselves as such. *American Brands Inc. v. R.J. Reynolds Tobacco Co.,* 413 F.Supp. 1352 (S.D.N.Y.1976). This Court declines to restrain defendants' use of Exhibits 4–B through 4–J because there is no likelihood of confusing plaintiff as the sponsor of those commercials. The Lanham Act was not intended to bring within its orbit every kind of undesirable business practice which practices may be remedied by other federal regulatory bodies such as the federal Trade Commission. See *Norwich Pharmacal Company v. Sterling Drug, Inc.,* 271 F.2d 569 (2d Cir.1959).

For the above reasons this Court grants plaintiff's application and issues a temporary restraining order, restraining defendants Lois Pitts Gershon, Inc. and Lafayette Circuit City Stores, Inc. from exhibiting or contributing to the exhibition on any radio or television or in any newspaper plaintiff's Exhibit 4–A, plaintiff's application is in all respects denied as to Exhibits 4–B through 4–J. Based on an agreement among the parties, which appears on the record (Transcript of December 10, 1984 hearing at 136–38), the Court will not restrain the media defendants. This restraining order will be in effect upon the posting of a $5000 security bond by the plaintiff.

The parties are to contact this Court upon receipt of this Order to schedule the Preliminary Injunction hearing.

It Is So Ordered.