**NUTRI/SYSTEM, INC.,**
**Plaintiff-Appellant,**

v.

**CON–STAN INDUSTRIES, INC.,**
**Defendant-Appellee.**

**No. 85–6449.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1986.

Decided Feb. 4, 1987.

James C. McConnon, Philadelphia, Pa., for plaintiff-appellant.

Mario A. Martella and Maurice B. Pilosof, Los Angeles, Cal., for defendant-appellee.

Before BROWNING, GOODWIN and FARRIS, Circuit Judges.

GOODWIN, Circuit Judge:

Nutri/System, Inc. ("Nutri/System") appeals from a judgment in favor of Con-Stan Industries, Inc. ("Con-Stan") on its suit for service mark infringement.

Nutri/System currently owns some 650 weight loss centers across the United States. The centers offer a weight control program involving diet, exercise, counseling and the use of Nutri/System food products. Nutri/System staffs its centers with managers, weight counselors or salespersons, full and part-time nurses, and a behavior education counselor with training in psychology or counseling. Nutri/System equips its centers, located in small shopping centers and medical buildings, with exercise and office equipment. The centers usually remain open five days a week.

Middle-income females over thirty who live within five miles of a center constitute the core of each center's clientele. Yearly membership costs about $300 and food items cost about $30 per week.

In 1976, Nutri/System incorporated under the name of Shape-up Weight Control Centers of America, Inc. In 1977, it became Weight Loss Medical Centers of America and began offering food products under the name Nutri/System 2000 Foods of the Future. The next year Nutri/System applied for a patent and trademark on the name and products. In 1979, the company requested that its franchisees change their name to Nutri/System Weight Loss Medical Centers. Finally, in 1980, it became Nutri/System, Inc.

From 1976 to 1980, Nutri/System advertised locally with leaflets and newspapers. In 1981, the company began a national advertising program. The ads principally featured "testimonials" from named, successful Nutri/System clients, the Nutri/System black and white logo, descriptions of the food and supervision offered, and references to the weight loss program's simplicity.

Since 1960, Con-Stan has offered health products under various registered names using the prefix "Nutri-": Nutri-Cal, Nutri-Metics, Nutri-Science, Nutri-Clean, and Nutri-Dent. In 1975, Ruby Miller, an independent contractor affiliated with Con-Stan, developed a successful weight loss program called "Trim-Away" which did not involve fees, dues, or fines. In 1980, Con-Stan decided to expand the Trim-Away Program and began using the name "Nutri-Trim" in relation to the weight loss counseling services.

Con-Stan schedules its Nutri-Trim meetings in community rooms, schoolrooms, or church facilities on a weekly basis. Clients pay only for the weight loss products Con-Stan offers for sale. The centers cater to a clientele attracted by its lower fees. Con-Stan has no national advertising budget; it generally accomplishes its "advertising" by sending letters and flyers to independent contractors. In 1980, Con-Stan filed an application to register the name Nutri-Trim as a service mark, but the Patent and Trademark Office stayed the application pending the outcome of this suit.

In July 1981, under the direction of Con-Stan, a Con-Stan licensee published a newspaper advertisement using the name Nutri-Trim and describing the weight loss counseling centers. Other ads subsequently appeared in newspapers. The ads featured a line drawing of a man and woman, some reference to "no fees, no dues, and no fines," and the Nutri-Trim International logo.

In 1982, Nutri/System filed the present complaint against Con-Stan. Nutri/System alleged federal trademark infringement and various pendent claims. After extensive discovery and trial, the district court entered judgment in favor of Con-Stan.

## A. Trademark/Service Mark Protection

First, Nutri/System contends that the district court improperly analyzed its service mark claim by failing to distinguish between service marks and trademarks. The Lanham Act ("the Act") defines trademarks and service marks at 15 U.S.C. § 1127. The former includes any name or symbol used to distinguish goods from those manufactured by others. *Id.* "[A] service mark is used as an identification mark which performs the same function in the selling and advertising of services that a trademark performs in respect of goods." *Crazy Eddie, Inc. v. Lois Pitts Gershon, Inc.*, 600 F.Supp. 537, 541 (S.D.N.Y.1984), *citing* 3 Callman, *Unfair Competition, Trademarks and Monopolies* § 68.1 at 71.

Nutri/System bases its challenge of the court's analysis on the fact that a service mark, unlike a trademark, may be acquired and infringed by advertising alone. *See Londontown Manufacturing Co. v. Cable Raincoat Co.*, 371 F.Supp. 1114, 1117 (S.D. N.Y.1974). Nutri/System focuses on Con-Stan's "invasion" of Nutri/System's "channel of trade" by placing ads in newspapers long after Nutri/System began its own ad-

vertising campaign. Given this focus, Nutri/System contends that the court should have concentrated only on the effect ConStan's advertising had on the association between Nutri/System's service and its mark. Therefore, Nutri/System claims the court committed reversible error by treating its case as a "run of the mill" trademark infringement suit.

■ Nutri/System's argument confuses the acquisition of service marks via advertising with the protection afforded them. Rights in a service mark may be acquired by use in advertising alone. *See* 15 U.S.C. § 1127. It does not follow, however, that the test for determining infringement must differ from that applied to trademarks or service marks acquired by more than advertising alone. Section 1053 of the Act provides the same protection to holders of service marks and trademarks. *Id.* § 1053. The courts consistently interpret this section to mean that "identical standards" govern trademark and service mark infringement cases. *West & Co., Inc. v. Arica Institute, Inc.,* 557 F.2d 338, 340 n. 1 (2nd Cir.1977). *See also Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833, 839 n. 15 (11th Cir.1983); *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 510 F.2d 1004, 1009 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975); *Crazy Eddie, Inc.,* 600 F.Supp. at 541; *American Diabetes Association, Inc. v. National Diabetes Association,* 533 F.Supp. 16, 18 n. 1 (E.D.Pa.1981), *aff'd,* 681 F.2d 804 (3rd Cir.1982).

This court has applied the same test for both service mark and trademark infringement cases without expressly so stating. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 782 F.2d 1508, 1509 (9th Cir. 1986); *Shakey's Inc. v. Covalt,* 704 F.2d 426, *passim* (9th Cir.1983). The Patent and Trademark Office also explained the similarities between service marks and trademarks in *Ex parte Belnap & Thompson, Inc.,* 90 U.S.P.Q. 123 (1951):

Service marks might just as well have been called trade marks for services, leaving conventional trade marks to be referred to as trade marks for goods.... Inasmuch as a service mark is not used with goods, it obviously can not be attached to the goods as is a trade mark for goods, and hence a service mark is used when it is used or displayed in the sale or advertising of the services. In addition, the definition of service mark offers a greater variety of possible marks than is the case with trade marks for goods. Aside from these differences, the trade mark sections [of the Lanham Act] and the various provisions thereof apply to service marks, that is, to trade marks for services, as they do to trade marks for goods.

*Id.* at 125.

Accordingly, Nutri/System's extensive advertising does not alter the method of analyzing its claim for service mark infringement. The district court did not err in assessing the claim for infringement under the same standard employed for trademarks.

B. *"Likelihood of Confusion"*

■ In any trademark suit, the trial court principally inquires into whether the defendant's mark is likely to cause confusion. *See Shakey's,* 704 F.2d at 431. We review the district court's findings as to "likelihood of confusion" under the clearly erroneous standard. *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1355–56 (9th Cir.1985) (en banc).

"Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques." *Shakey's,* 704 F.2d at 431. In a series of cases, we developed a multi-factor analysis for determining the "likelihood of confusion" between trademarks or service marks. These factors include: (1) strength of the mark; (2) similarity of the marks; (3) marketing channels and proximity of the goods or services; (4) good faith and intent; and (5) evidence of actual confusion. *See Park 'N*

*Fly,* 782 F.2d at 1509; *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.,* 616 F.2d 440, 444 (9th Cir.1980); *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979).

### 1. Strength of the Mark

■ With regard to the first factor, Nutri/System argues that the district court erred in characterizing its mark as "suggestive" and weak rather than "arbitrary" and strong. In general, the more unique or arbitrary a mark, the more protection a court will afford it. In *Surgicenters of America v. Medical Dental Surgeries,* 601 F.2d 1011 (9th Cir.1979), we established a continuum of marks from "generic," afforded no protection; through "descriptive" or "suggestive," given moderate protection; to "arbitrary" or "fanciful," awarded maximum protection. *Id.* at 1014–15.

Arbitrary or fanciful marks (*i.e.,* Kodak) are called "strong" marks, whereas descriptive or suggestive marks are "weak." *Sleekcraft,* 599 F.2d at 349. Among "weak" marks, courts bestow less protection on a descriptive mark than a suggestive one. *Surgicenters,* 601 F.2d at 1014–15. The former specifically describes a characteristic or ingredient of an article or service (*i.e.,* "Park 'N Fly"), while the latter suggests, rather than describes, an ingredient, quality or characteristic (*i.e.,* Sleekcraft). In order to receive protection, the holder of a descriptive mark must demonstrate "secondary meaning," that is, show that an association between the mark and the product has been established in the consumers' minds. *See, e.g., Levi Strauss,* 778 F.2d at 1354. In contrast, a "suggestive" mark holder need not demonstrate "secondary" meaning, but will receive protection if the infringing mark is quite similar and the goods or services they connote are closely related. *Sleekcraft,* 599 F.2d at 350.

■ The district court properly determined that the term "Nutri" suggests, but falls short of explicitly describing, health and weight loss. Further, the court did not clearly err in classifying the mark as weak. In *Alpha Industries,* 616 F.2d 445–46, we found that the prefix "alpha" enjoys widespread usage as a trademark and, therefore, is weak. Here, similarly, those in the food and health products field commonly use "Nutri" as a prefix. In fact, in an earlier suit brought by Con-Stan against Nutri/System, the Patent and Trademark Office rejected Con-Stan's attempt to prevent Nutri/System's registration of the Nutri/System 2000 logo for the same reason. *See Con-Stan Industries, Inc. v. Nutri-System Weight Loss Medical Centers of America, Inc.,* 212 U.S.P.Q. 953 (1981).

Nutri/System contends, however, that its extensive advertising somehow transformed its mark into a strong or arbitrary one. While consumer recognition of a mark may increase the amount of protection afforded it, *see* J. McCarthy, *Trademarks and Unfair Competition* § 11:9 at 453–57 (2d ed. 1984 & Supp.1986), it does not mean the mark becomes arbitrary. Although Nutri/System engaged in extensive advertising, in *Sleekcraft,* we rejected the contention that extensive advertising automatically transforms a suggestive mark into a strong one. 599 F.2d at 350. Advertising remains only one of many factors taken into account when classifying the strength of marks. Therefore, the district court did not clearly err in finding "Nutri/System" to be a "weak" mark.

### 2. Similarity of the Marks

Next, Nutri/System argues that the district court erred in determining that the Nutri/System and Nutri-Trim logos were dissimilar in appearance, sound and meaning. Nutri/System claims error in the court's side-by-side advertisement analysis since the dominant feature of the marks, "Nutri," is identical. In *Alpha Industries,* we stated that determination of "similarity" involves consideration of "the marks and names in their entirety and as they

appear in the marketplace...." 616 F.2d at 444.

■ The district court examined the logos in their entirety and considered the relevant factors, appearance, sound and meaning, in comparing the marks. *See, e.g., J.B. Williams Co., Inc. v. Le Conte Cosmetics, Inc.,* 523 F.2d 187, 192 (9th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1110, 47 L.Ed.2d 317 (1976). The district court's conclusion of dissimilarity based on analysis of these factors was not clearly erroneous.

### 3. Marketing Channels and the Proximity of Goods or Services

■ Nutri/System next challenges the district court's handling of the third factor, channels of trade and proximity of goods and services. Convergent marketing channels increase the likelihood of confusion. Therefore, the courts examine the proximity of the marketing channels to one another and whether direct competition exists. *See Sleekcraft,* 599 F.2d at 353. The court will consider the similarity in advertising as one factor in this examination. *Pizzeria Uno Corp. v. Temple,* 747 F.2d 1522, 1535 (4th Cir.1984).

Although similarities exist between Nutri/System's and Nutri-Trim's services, the court determined that they differ significantly in the method of operation, the socioeconomic customer group served and the facilities in which they offer their services. Therefore, the channels of trade do not converge, and there is little likelihood of confusion.

■ Nutri/System argues that newspaper advertising represents *the* relevant channel of trade which means the markets do converge, producing a strong likelihood of confusion. Because the district court considered advertising as one factor in its determination of the services' proximity, and because Nutri/System does not challenge the court's findings regarding the services' differences, Nutri/System fails to demonstrate that the court erred.

### 4. Good Faith and Intent

■ Nutri/System also challenges Con-Stan's good faith and intent in entering the Weight Loss Program market with the prefix "Nutri." When an alleged infringer knowingly adopts a mark similar to another's, the court examines his good faith and intent in developing and marketing it. *Sleekcraft,* 599 F.2d at 354; *Carson Manufacturing Co. v. Carsonite International Corp., Inc.,* 686 F.2d 665, 671 (9th Cir.1981), *cert. denied,* 460 U.S. 1052, 103 S.Ct. 1499, 75 L.Ed.2d 930 (1983).

Con-Stan had used the prefix "Nutri" on health related products since 1960, long before Nutri/System, Inc. existed. When Con-Stan expanded into the weight loss program field after Nutri/System, it adopted a name, using a prefix with which it already felt comfortable and which it had advertised in connection with its other activities. Nutri/System fails to demonstrate that Con-Stan entered the field with "Nutri" in order to deceive the public by causing confusion between its program and Nutri/System's.

### 5. Actual Confusion

Finally, Nutri/System claims error in the court's finding that Nutri/System made no significant showing of actual confusion. Evidence of actual confusion is "persuasive proof that future confusion is likely." *AMF, Inc.,* 599 F.2d at 352.

■ The court determined that, in light of both parties' high volume of business, the misdirection of several letters and checks proved insignificant. Nutri/System argues that the district court misapplied the law stated in *Scott Paper Co. v. Scott's Liquid Gold, Inc.,* 589 F.2d 1225, 1231 (3rd Cir.1978), by considering the volume of Nutri/System's business as well as Con-Stan's. Although the court in *Scott Paper* only considered the defendant's volume, the court did not indicate an examination of plaintiff's volume would be improper. *Id.* Moreover, the instances of confusion, at best, were thin, and at worst, were trivial.

*See Alpha Industries,* 616 F.2d at 445. The court acted properly in finding that any actual confusion was de minimis.

In connection with its argument regarding actual confusion, Nutri/System claims the district court abused its discretion in limiting Nutri/System's discovery to the twenty-five Nutri-Trim club locations selected by Con-Stan. Nutri/System argues that the limitation to the clubs selected by Con-Stan effectively precluded it from proving actual confusion. Several courts in other jurisdictions have held that similar limits on discovery can be an abuse of discretion. *See, e.g., Howze v. Jones & Laughlin Steel Corp.,* 750 F.2d 1208, 1213 (3rd Cir.1984); *Trevino v. Celanese Corp.,* 701 F.2d 397, 406 (5th Cir.1983). However, the record shows lack of diligence on Nutri/System's part in obtaining information regarding actual confusion and failure to act promptly. Because the record does not disclose an abuse of discretion, Nutri/System has failed to demonstrate that it is entitled to relief.

### C. *Conclusion*

To obtain protection, the holder of a mark must demonstrate a "likelihood of confusion" between its service and the alleged infringer's service. In light of the court's findings on the five factors relevant to proving the likelihood of confusion, there was no error in holding in favor of defendant Con-Stan.

Affirmed.