**BREAK-AWAY TOURS, INC., a California corporation, Plaintiff,**

v.

**BRITISH CALEDONIAN AIRWAYS, a United Kingdom corporation, Defendant.**

**Civ. No. 85-1434-GT(CM).**

United States District Court, S.D. California.

June 3, 1988.

John L. Haller, Brown, Martin, Haller and Meador, San Diego, Cal., for plaintiff.

Harold E. Wurst, Leonard D. Messinger, Nilsson, Robbins, Dalgarn, Berliner, Carson and Wurst, Los Angeles, Cal., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GORDON THOMPSON, Jr., Chief Judge.

The case was tried by the court, the Honorable Gordon Thompson, Jr., Chief Judge, presiding, sitting without a jury on May 27; June 2, 3, 4, 5, 8, and 9, 1987. Plaintiff was represented by John L. Haller, Esq. of Brown, Martin, Haller, and Meador. The Defendant BRITISH CALEDONIAN AIRWAYS was represented by Harold E. Wurst, Esq. and Leonard D. Messenger, Esq. of NILSSON, ROBINS, DALGARN, BERLINER, CARSON and WURST.

Evidence having been received and arguments having been made and the court having carefully reviewed and considered the evidence presented at trial, the court now makes the following findings of fact and conclusions of law as required by Fed. R.Civ.P. 52.

## FINDINGS OF FACT

1. Plaintiff BREAK–AWAY TOURS, INC. is a California corporation formed April 19, 1975 and the holder of a registered service mark (Federal Registration No. 1,119,812) (California Registration No. 5814) for the mark "BREAK–AWAY Tours" for travel agency services based on a first use of April 1, 1975. Plaintiff at all relevant times herein has been entirely owned by Barry Tobias and specializes in travel tour packages including airfare, hotel, theater admission and similar items which it then sells.

2. Defendant BRITISH CALEDONIAN AIRWAYS ("B–CAL") is a corporation formed in the United Kingdom having its headquarters at Gatwick Airport near London, England. B–CAL is a scheduled airline having its principal United States office in Houston, Texas and doing business in Los Angeles and San Diego, California.

3. The dispute in this case centers around the service mark "BREAK–AWAY Tours" registered by Plaintiff for "Travel Agency Services" and Defendant's use of "Breakaway" in connection with its tour packages to Great Britain during 1984 in the United States.

4. Plaintiff's travel tour business generally consists of selling tour packages to high school and college students. Usually, Plaintiff conducts one tour each year to New York at Easter time and one tour each year to London at Christmas time. The primary purpose of the tours is to attend the theater during the students' school vacation periods.

5. Plaintiff advertised and promoted his business through direct and personal contact with drama teachers in the high schools and college. He did so by direct mail, communication by telephone and personal visits. Plaintiff has concentrated his marketing efforts to the western United States. His customers are primarily students from California, but he has taken groups from Oregon, Washington, Nevada and Arizona as well.

6. Plaintiff has, at all times, used his mark in connection with his tours to London and New York. The mark "BREAK–AWAY" suggests or describes plaintiff's travel services. Plaintiff markets his tours to students for their school break periods. The mark suggests that students spend their break away or that they break-away from their routine and travel with plaintiff.

7. On January 13, 1983, Plaintiff entered into a wholesale agreement with B–CAL in Los Angeles, California through B–CAL's representative, June Lane. She was responsible for handling Plaintiff's purchase of air transportation from Defendant for Plaintiff's tour groups. Among the wholesalers who had an agreement with B–CAL, Plaintiff was a relatively small local service.

8. Defendant's use of Plaintiff's mark was entirely innocent. B–CAL developed

the "Breakaway" name in conjunction with an advertising agency and a British ground tour operator known as "Gulliver's Travels." During the summer of 1982, Defendant was working with these companies in Britain to develop an in-house tour package program to be used in South America, West Africa, the Middle East and Hong Kong. B–CAL conducted a trademark search in those countries and thereafter adopted the name "Breakaway" for its package tour.

9. Defendant's United States management discouraged Gulliver's Travels from undertaking the "Breakaway" program in the United States. After some pressure from B–CAL in Britain, the promotion of the program began in the United States in January 1984 without a trademark search.

10. In mid-December 1984, Plaintiff first learned of Defendant's use of the name "Breakaway" in connection with its British tour programs and notified Defendant's representative in Los Angeles of its ownership of the federal registration on "BREAK–AWAY Tours." Thereafter, from approximately December 17, 1984 to March 7, 1985, there ensued both oral and written communications between Plaintiff and Defendant concerning the continued use by Defendant of the name "Breakaway."

11. The negotiations culminated on March 7, 1985 with Plaintiff's demand that Defendant cease all use of the name "Breakaway." Upon receipt of Plaintiff's letter on March 11, B–CAL ceased all use of "Breakaway" in the promotion of its tour packages. Prior to March 11, 1985, Plaintiff had never requested that B–CAL cease use of the "Breakaway" mark. B–CAL had voluntarily stopped using the mark in the Southern California area as early as January, 1985.

12. Plaintiff received occasional phone calls and some misdirected correspondence after B–CAL began promoting its Breakaway tour program. Although the marks are nearly identical, the services offered were sufficiently dissimilar that anyone making reasonable inquiry would realize that B–CAL was not running student theater tours and Plaintiff was not offering a multi-facted travel package to London. While there was some limited confusion, no evidence was presented that anyone ever took one of Defendant's tours under the misconception it was sponsored by the Plaintiff, or vice-versa.

13. Since 1983, Plaintiff sold the following tour packages to the following number of persons:

| | 1982 | 1983 | 1984 | 1985 | 1986 |
|---|---|---|---|---|---|
| London Tour (Easter time) | 205 | 170 | 53 | 60 | 0 |
| Villages Tour | – | 80 | 80 | – | – |
| New York Tour (Christmastime) | 950 | 785 | 760 | 870 | NA |

14. At trial, except for Plaintiff's 1985 Easter time tour to London, which was purchased from Defendant under its "Breakaway" tour package well after Plaintiff learned of Defendant's use of the "Breakaway" name, Plaintiff admitted that the use of "Breakaway" by Defendant had little, if any, affect on the numbers of tour sales made by him.

15. Plaintiff has failed to demonstrate anything other than de minimis damage to its business or compensible out of pocket expenses. Furthermore, Plaintiff has not proven that B–CAL intended to appropriate his mark nor that B–CAL profitted from its "Breakaway" business at the expense of Plaintiff.

## CONCLUSIONS OF LAW

1. Plaintiff and Defendant were unable to agree on what claims were at issue in this action. The court holds that Plaintiff presented causes of action for federal service mark infringement, 15 U.S.C. § 1114, et seq., false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for trademark infringement, Cal.Bus. & Prof.Code § 14330 et seq., and unfair competition, Cal.Bus. & Prof.Code § 17200 et seq., under the state law. Plaintiff also has set forth a claim for "trade disparagement."

2. This court has jurisdiction over this case pursuant to 28 U.S.C. § 1338, 15 U.S. C. § 1121, and 28 U.S.C. § 1332.

3. Plaintiff must show a likelihood of confusion to prevail upon its state and

federal infringement and unfair competition claims. In any trademark suit, the trial court principally inquires into whether the defendant's mark is likely to cause confusion. *Nutri/System, Inc. v. Con-Stan Industries, Inc.*, 809 F.2d 601 (9th Cir.1987). Likelihood of confusion exists when consumers are likely to assume that a product or service is associated with a source other than its actual source because of similarities between the two sources' marks or marketing techniques. *Shakey's, Inc. v. Covalt*, 704 F.2d 426 (9th Cir.1983).

4. The owner of a registered mark in California may establish infringement if anyone uses the mark that is identical with, or substantially indistinguishable from, a mark registered in the State on or in connection with goods or services provided by the Plaintiff. Cal.Bus. & Prof.Code § 14340. This claim is established by Plaintiff's registration of its mark in California and by B–CAL's use of a similar mark in the provision of similar services when a likelihood of confusion is found. *See Century 21 v. Sandlin*, 846 F.2d 1175 (9th Cir.1988). This same test is used in evaluating the unfair competition claim. *Id.*

■ 5. In a series of cases beginning with *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir.1979), the Ninth Circuit has developed a multi-factor analysis for determining the likelihood of confusion between trademarks or service marks where the goods or services are related. These factors are: strength of the mark; proximity of the goods; similarity of the marks; evidence of actual confusion; marketing channels used; good faith and intent; and the type of goods and degree of care likely to be exercised by the purchaser. *Id. See also Park'N Fly v. Dollar Park & Fly, Inc.*, 782 F.2d 1508 (9th Cir.1986).

■ 6. Applying these factors to the evidence in this case, it is clear that Plaintiff's mark is a descriptive mark that suggests that the prospective customer breakaway from his normal routine and take a trip. Such a mark will receive protection if the infringing mark is quite similar and the goods or services they connote are closely related. *Sleekcraft*, 599 F.2d at 350. It is also clear from the evidence that the marks are extremely similar and may even be thought by some to be identical. The marketing channels here involved, however, are dissimilar, although the parties render the same general service. Plaintiff's services are marketed on a personal contact basis between the Plaintiff and high school drama teachers as well as college drama students. Plaintiff has in general confined his tour packages to these two groups. B–CAL on the other hand, has marketed and did market, its "Breakaway" program to the public at large throughout the world.

Plaintiff suggested in testimony through its owner and sole proprietor that a minimum amount of actual confusion existed in the nature of misdirected correspondence and an occasional telephone call. Plaintiff has not established, however, that B–CAL knowingly adopted a mark similar to its mark with the intent to gain an advantage in the Plaintiff's markets. B–CAL acted in good faith and without malice or intent to deceive either the Plaintiff or public by causing confusion between its program and that of Plaintiff.

Based upon an analysis of these factors, the court concludes that while there was little evidence of actual confusion, the likelihood of confusion existed. Plaintiff is, therefore, entitled to obtain protection for its mark.

7. Plaintiff has consistently asserted a cause of action for "trade disparagement." It has, however, characterized this claim differently at different points in this case. At one time, Plaintiff suggests that the disparagement claims were part of the state unfair competition claim. On other occasions, it has appeared that the Plaintiff is asserting an action for trade libel as set forth in *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber*, 408 F.Supp. 1219 (D.C.Colo.1976), *modified*, 561 F.2d 1365, 1373–74 (10th Cir.1977).

Trade libel is an intentional disparagement of the quality of property which results in pecuniary damage. B. Witkin, *Summary of California Law*, § 573 (9th Ed.1988) (citing Rest.2d, Torts § 626). If this is the cause of action which Plaintiff means to assert, it has not come forward with evidence to support its claim.

8. The court may, in the exercise of its equitable powers, grant monetary relief under several of Plaintiff's causes of action. Profits, actual damages and costs are available for federal trademark infringement violations. 15 U.S.C. § 1117. A prevailing plaintiff may also obtain damages under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), up to treble profits or damages for state trademark infringement, Cal.Bus. & Prof.Code § 14340(e), and restitution for state unfair competition even though not explicitly provided by statute. *Newport Components v. NEC Home Electronics*, 671 F.Supp. 1525, 1551–52 (C.D.Cal.1987) (discussing availability of damages for unfair competition). No monetary relief is warranted in this case.

9. A plaintiff does not obtain a monetary award as a matter of right under the Lanham Act, 15 U.S.C. § 1117. *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903, 917 (Fed.Cir.1984). Section 1117 expressly states that monetary relief is for compensatory purposes and is not to be used as a penalty. In fashioning a remedy, the court looks to the character of the conduct giving rise to the injury. *Id.* (citing *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 130, 67 S.Ct. 1136, 1139, 91 L.Ed. 1386 (1947)). In some circumstances, an injunction alone may satisfy the equities of the case, particularly in the absence of wrongful intent, *id.* (citations omitted), or actual damages. *Id.* (Citing *Highway Cruisers of California, Inc. v. Security Industries, Inc.*, 374 F.2d 875, 876 (9th Cir.1967)).

The court must also consider the goal of section 1117: to achieve equity among the parties. This circuit has stated that equity is satisfied if "one [gets] just enough relief to stop the evil where it is apparent no great damage was done to the complainant." *Id.* Defendant is not to retain the fruits of any unauthorized trademark use or to continue that use; Plaintiff is not entitled to a windfall.

Equity will be satisfied with an injunction under the circumstances presented here. Plaintiff has not demonstrated a willful infringement of its mark. Moreover, Plaintiff has shown no actual damages arising out of the use of the mark. At most, Plaintiff has shown that he had to answer a few phone calls and redirect some correspondence. Plaintiff has not demonstrated that any loss in sales, if any, was due to the Defendant's infringement.

10. Plaintiff is not entitled to a monetary award under Section 43(a) of the Lanham Act. Damages may be obtained under Section 43(a) only to the extent that such damages were caused by the violation of the Act. *Burndy Corp. v. Teledyne Industries, Inc.*, 748 F.2d 767, 771 (2d Cir. 1984); *Can Am Engineering Company v. Henderson Glass, Inc.*, 814 F.2d 253, 257–58 (6th Cir.1987). As noted above, Plaintiff has not proven that Defendant's violation caused any loss in sales or other damage.

11. The court will not grant Plaintiff monetary relief under the state unfair competition statute. Injuries arising out of unfair competition may be monetarily redressed by restitution, but not damages. *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1392 (9th Cir.1985). Plaintiff has not shown that Defendant obtained any benefit from its use of Plaintiff's mark. Moreover, an award of damages or profits for state infringement is not in order where defendant had no fraudulent intent, plaintiff suffered no real damage and defendant retained no benefit from its use.

12. For the reasons stated above, an injunction will issue against the Defendant enjoining it from henceforth using the word "Breakaway" in connection with any facet of its travel business. Plaintiff is awarded nominal damages in the amount of $1.00. All other relief sought by Plaintiff is DENIED.

To the extent any Findings of Fact are Conclusions of Law or mixed conclusions of law and fact, they are adopted as such. To the extent any Conclusions of Law are Findings of Fact or mixed findings of law and fact, they are adopted as such.