FILED

MAY 06 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FALCON STAINLESS, INC., a California Corporation,<br><br>          Plaintiff - Appellant,<br><br>  v.<br><br>RINO COMPANIES, INC., DBA Performance Sales, a California Corp., DBA Rino Flex Connectors; JOHN NOVELLO, DBA Performance Sales Inc., an individual; HARRY RIEGER, an individual; PERFORMANCE SALES INC., a California corporation,<br><br>          Defendants - Appellees. | No. 11-56863<br><br>D.C. No. 8:08-cv-00926-AHS-MLG<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Alicemarie H. Stotler, Senior District Judge, Presiding

Argued and Submitted February 3, 2014
Limited Remand February 14, 2014
Pasadena, California

Before: KLEINFELD, SILVERMAN, and HURWITZ, Circuit Judges.

---

          [*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Falcon Stainless and Rino Companies are competing manufacturers of stainless steel water connectors used in plumbing applications. After the jury returned a verdict in Falcon's favor, the district court granted judgment as a matter of law (JMOL) for Rino Companies and its co-owners, John Novello and Henry Rieger (collectively, Rino), on Falcon's claims for trademark infringement, false designation of origin, unfair competition, and intentional interference with prospective economic advantage. The district court also granted Rino's motion under Federal Rule of Civil Procedure 59(a) for a new trial on Falcon's claims for false advertising and trade libel/product disparagement. Falcon appealed.

We determined that this court lacked jurisdiction over the appeal because the order granting a new trial on Falcon's claims for false advertising and trade libel/product disparagement is an interlocutory order not appealable as a final judgment and also not a conditional new trial order under Rule 50(c)(1). See Schudel v. Gen. Elec. Co., 120 F.3d 991, 994–95 & n.9 (9th Cir. 1997), abrogated on other grounds by Weisgram v. Marley Co., 528 U.S. 440 (2000). We ordered a limited remand for the district court to consider whether its order granting Rino's motion for JMOL on Falcon's claims for trademark infringement, false designation of origin, unfair competition, and intentional interference with prospective

economic advantage should be certified as an appealable final judgment under Rule 54(b). The district court certified its order. We now affirm the JMOL on the trademark infringement, false designation of origin, and intentional interference with prospective economic advantage claims. We do not discuss the unfair competition claim because Falcon abandoned it on appeal.

I.

The district court properly granted JMOL on Falcon's claims for false designation of origin under 15 U.S.C. § 1125(a) and common law trademark infringement related to its "SWC" parts numbers. "A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir. 2002).

Even assuming that Falcon's parts numbers are a valid mark, there is not substantial evidence in the record to support the jury's finding that Rino's use of its own parts numbers was likely to confuse customers. 15 U.S.C. § 1125(a)(1)(A). Although several of the Sleekcraft factors for determining likelihood of confusion favor Falcon, the most critical ones do not. See AMF Inc. v. Sleekcraft Boats, 599

3

F.2d 341, 348–49 (9th Cir. 1979), <u>abrogated in part on other grounds as recognized by</u> <u>Mattel, Inc. v. Walking Mountain Prods.</u>, 353 F.3d 792, 810 n.19 (9th Cir. 2003).

Falcon and Rino sell similar products, through the same marketing channels, to the same customers.  <u>Id.</u> at 348.  Some factors, however, "are much more important than others, and the relative importance of each individual factor will be case-specific."  <u>Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.</u>, 174 F.3d 1036, 1054 (9th Cir. 1999).  In this case, the weakness of Falcon's mark, the dissimilarities between Rino's and Falcon's parts numbers, and the lack of evidence of actual confusion lead us to agree with the district court that the jury's verdict was not supported by substantial evidence.  <u>Cf.</u> <u>Chesebrough-Pond's, Inc. v. Faberge, Inc.</u>, 666 F.2d 393, 398-99 (9th Cir. 1982) (affirming summary judgment notwithstanding conclusion that "product lines are identical and that the products move through the same marketing channels to the same outlets for purchase by the same class of customers").

Falcon's parts numbers are descriptive terms, which are inherently "weak" marks.  <u>Nutri/Sys., Inc. v. Con-Stan Indus., Inc.</u>, 809 F.2d 601, 605 (9th Cir. 1987).

4

Falcon uses the letters "SWC" to indicate that the parts are stainless water connectors and the numbers to indicate dimensions, e.g., the SWC 10012 part is a stainless water connector 1 inch in diameter and 12 inches in length. Although advertising expenditures can strengthen an otherwise weak mark, Brookfield, 174 F.3d at 1058, Falcon does not advertise its parts numbers in the trademark sense to identify their source. The parts numbers are only used on Falcon's price lists and website to identify the different connectors that it sells.

Second, the parties' parts numbers are dissimilar. See M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1082 (9th Cir. 2005) ("the similarity of the marks has always been considered a critical question in the likelihood-of-confusion analysis") (quotations and citations omitted). Rino uses "SWF" while Falcon alternates between the prefixes "FF" and "SWC". Though both use "SW," this in and of itself is not likely to cause confusion, both because the prefixes are dissimilar and the parties sell their connectors to wholesale customers and experienced plumbing professionals. See Brookfield, 174 F.3d at 1060.

Finally, there was no evidence of actual confusion. Although Falcon and Rino received purchase orders from wholesale customers that used the other

party's parts numbers and name, the only customers who testified said that they were not confused and that the orders were not misdirected. Falcon's wholesale customers testified that they used the numbers interchangeably for convenience and that their customers ordered product by using the vendor name, not the parts number. The fact that Falcon received some return requests for Rino products also does not prove actual confusion. The jury heard testimony that these returns were a result of wholesale customers not updating their computer systems to reflect the fact that Rino's owners were no longer Falcon sales representatives. The lack of actual confusion in this case is "persuasive evidence that there is no likelihood of confusion." Id. at 1050 (emphasis omitted). We affirm the order granting JMOL on this claim.

II.

We also affirm the district court's order granting JMOL on Falcon's trademark claims related to its diamond F product stamp. We examined both parties' product stamps and conclude that they are not similar. Falcon uses an F surrounded by a flattened diamond shape with sides that are different lengths. In contrast, Rino uses an S surrounded by a rhombus (a square with all sides the same

6

length.)  "Where the two marks are entirely dissimilar, there is no likelihood of confusion."  Id. at 1054.  These marks do not look alike at all.

There was no evidence of actual confusion.  No customers testified that they confused Rino and Falcon products because of the product stamps.  The general manager of a plumbing company testified that his company was confused as to which manufacturer produced some leaking connectors they installed.  But he did not testify that the confusion was a result of the product stamps.  There was no evidence that could lead a reasonable juror to conclude that Rino's use of its visually dissimilar product stamp was "likely to confuse an *appreciable* number of people as to the source of the product."  Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1151 (9th Cir. 2002) (emphasis in original); see also Nutri/Sys., 809 F.2d at 607 (holding that the district court properly found that trivial instances of actual confusion were *de minimis*); Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 633 (9th Cir. 2005) (same).

Although the parties sell similar products, use the same marketing channels, and Falcon's mark is arbitrary (having no meaning other than a source indicator), Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925,

7

927 (9th Cir. 2005), these factors are insufficient to support the jury's verdict, because of the dissimilarities between the marks and the lack of evidence of actual confusion or any likelihood of confusion. See Chesebrough-Pond's, 666 F.2d at 398-99. The likelihood of confusion must be "probable, not merely possible." M2 Software, 421 F.3d at 1085 (quotations and citation omitted). We affirm the district court's order granting JMOL on this claim.

III.

The district court correctly granted Rino's motion for JMOL on Falcon's claim for intentional interference with prospective economic advantage. Falcon contends that Rino advertised that its SWF 118 connector was certified under the Uniform Plumbing Code and complied with industry standards after it was determined to be noncompliant and decertified. A plaintiff must prove the following elements in order to prevail on a claim for intentional interference with prospective economic advantage: "(1) an economic relationship between plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) defendant's knowledge of the relationship; (3) an intentional act by the defendant, designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the

8

defendant's wrongful act." Edwards v. Arthur Andersen LLP, 189 P.3d 285, 290 (Cal. 2008).

There was no evidence that Rino's conduct disrupted Falcon's business relationships or proximately caused economic harm to Falcon. See Id. Falcon introduced testimony from two wholesale customers. Neither testified that Rino's ads influenced their purchasing decisions. Rather, they testified that they purchased products based on price and that they stopped buying from Falcon for this reason. Both customers said that they would not purchase uncertified products. There was no evidence, however, that they purchased Rino's SWF 118 connector while it was decertified or, if they did, that they would have bought from Falcon had they known that it was decertified. This is not substantial evidence to support the jury's finding that Rino's conduct disrupted Falcon's business relationships and proximately caused economic harm to Falcon.

**AFFIRMED.**

9