# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARI ANN GEST, an elector of the
State of Oregon and Chief
Petitioner for a State Initiative.
*Plaintiff,*

and

JOHN SAJO, an elector of the State
of Oregon and Chief Petitioner for
a State Initiative; JOAN HORTON, an
elector, petitioner sheet signor and
circulator within the State of
Oregon; TED PICCOLO, Chief
Petitioner for a State Initiative.
*Plaintiffs-Appellants,*

v.

BILL BRADBURY,
*Defendant-Appellee.*

No. 04-36034

D.C. No.
CV-04-00853-OMP

OPINION

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior Judge, Presiding

Argued and Submitted
December 6, 2005—Portland, Oregon

Filed April 17, 2006

Before: Dorothy W. Nelson and Diarmuid F. O'Scannlain,
Circuit Judges, and Larry A. Burns,* District Judge.

*The Honorable Larry A. Burns, United States District Judge for the
Southern District of California, sitting by designation.

Opinion by Judge O'Scannlain

**COUNSEL**

Daniel W. Meek, Portland, Oregon, argued the cause for the appellants. Linda K. Williams was on the brief.

Richard D. Wasserman, Office of the Attorney General of Oregon, Salem, Oregon, argued the cause for the appellee. Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, Office of the Attorney General of Oregon, Salem, Oregon, were on the brief.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether signature collectors have standing to seek declaratory and injunctive relief arising out of a state official's application of rules governing Oregon's initiative petition process.

I

The Oregon Constitution sets requirements for the number of voter signatures that initiative petition signature collectors

must collect to qualify a statutory provision or constitutional amendment for placement on a statewide election ballot. If the chief petitioners wish to place an initiative on the ballot to make a change to statutory law, they must gather signatures amounting to six percent of the votes cast in the previous gubernatorial election. Or. Const. art. IV, § 1(2). The requirement is eight percent for a proposed constitutional amendment. *Id.*

The State Elections Division follows a two-step process to determine whether a petition contains sufficient signatures. First, the Elections Division verifies the "circulator certifications" that the petition circulators must complete on each signature sheet of a petition, attesting that all the persons who signed the signature sheet did so "in the presence of the circulator and that the circulator believes each individual is an elector." Or. Rev. Stat. § 250.045(7). The Elections Division removes from consideration any signature sheets that do not contain a properly completed circulator certification.

In the second step, the Elections Division performs statistical sampling on the remaining signature sheets to determine the validity rate of the signatures. Or. Rev. Stat. § 250.105(4). This process involves randomly selecting a small percentage of the signatures for verification by the signors' home county's election officials. After the county election officials report back the number of valid voter signatures, the Elections Division extrapolates the number of valid voter signatures for a petition based on the validity rate of the sample. The validity of this second step of the certification process is not at issue here; the parties challenge the Secretary of State's handling of the first step.

A

In the petition circulation cycle leading up to the November 2004 ballot, John Sajo organized a petition to place on the ballot a proposed statute that would amend Oregon's Medical

Marijuana Act. Mari Ann Gest organized a petition to place on the ballot a proposed statute relating to Oregon forests. Ted Piccolo spearheaded a petition to place on the ballot a proposed constitutional amendment that would restore legislative term limits. Joan Horton helped collect signatures for Gest's petition involving Oregon forests and signed both the forest petition and the medical marijuana petition.

After submitting signature sheets for early verification in May 2004, Sajo, Gest, Piccolo, and Horton learned that the Elections Division had rejected some of the signature sheets each had submitted due to improper circulator certifications. To explain why, the Elections Division gave each of them a copy of the internal staff guidelines for evaluating circulator certifications. These guidelines provided, for example, that the Elections Division would not accept signature sheets in which the date portion of the circulator certification had been overwritten with a different date. The guidelines also provided that the Elections Division would not accept signature sheets in which the signature on the circulator certification was hand-printed unless the Elections Division had proof that the circulator normally signed in that way, such as from the circulator's voter registration card on file.

B

Frustrated by these rules, Sajo, Gest, Piccolo, and Horton ("signature collectors") brought this 42 U.S.C. § 1983 action for declaratory and injunctive relief against Oregon's Secretary of State. They alleged that the Elections Division had violated their rights to due process by applying unwritten rules to evaluate circulator certifications without notifying them of these rules in advance. They also alleged that the rules burdened their First Amendment rights and the Equal Protection and "freedom of travel" rights of out-of-state circulators. They sought a declaratory judgment that the Elections Division's procedure was unconstitutional and an injunction requiring the Elections Division to accept signature sheets

"bearing 'erroneous' dates of circulator signatures, particularly if those 'errors' are corrected by the circulator" or "bearing 'erroneous' circulator signatures, particularly if the circulator offers evidence that the signature is her normal one."

The record indicates that the Elections Division conducted its usual two-step procedure for determining whether each petition qualified for the ballot. Sajo's petition proposing an amendment to Oregon's Medical Marijuana Act qualified even though the Elections Division removed some of the signature sheets for improper circulator certification. Gest's forest initiative petition similarly qualified for the ballot. Gest voluntarily dismissed her complaint prior to trial, but Sajo maintained his action.

C

Piccolo's term limit petition did not qualify for the ballot. As a petition seeking to place a proposed constitutional amendment on the ballot, it needed 100,840 valid signatures (eight percent of the votes cast in the previous gubernatorial election). Piccolo submitted a raw total of 118,568 voter signatures. The Elections Division's removal of the signature sheets that contained improper circulator certifications resulted in the removal of 5,649 signatures. The statistical sampling on the remaining 112,919 signatures indicated an 81% validity rate, which yielded a total of 92,200 valid signatures, which was 8,640 shy of the 100,840 needed to place the proposed constitutional amendment on the ballot.

At trial, the district court determined that, even if it ordered the Elections Division to reinstate all excluded signatures, the term limits petition would not have the 100,840 valid signatures necessary to place the proposed constitutional amendment on the ballot because the number of excluded signatures (5,649) was less than the additional number needed (8,640). Although the signature collectors' statistician testified that a

statistical sampling of all the signatures combined (including the 5,649 disqualified signatures) might possibly have yielded a higher overall validity rate, the district court made a factual finding that "the term limits petition lacked sufficient signatures to qualify for the ballot even if the rejected signature sheets were reinstated."

Based on this factual finding, the district court dismissed the claims as moot. The court explained that "if this court were to order that defendant reinstate every disqualified signature sheet, the ultimate outcome of the process would not be affected." The court rejected the signature collectors' contention that the case fell within the exception to mootness for cases capable of repetition yet evading review. The district court further noted that the signature collectors were unlikely to face an injury related to circulator certifications in the future because the Elections Division had communicated its procedures. The signature collectors filed this timely appeal.

## D

The Secretary of State subsequently adopted a detailed administrative rule that "incorporate[s] into administrative law previously enforced standards on what constitutes a sufficient circulator certification." Or. Admin. Code § 165-014-0270. At oral argument, the signature collectors' counsel clarified that his clients do not ask us to rule on the legality of such rule. Instead, they narrowly seek declaratory and injunctive relief that would prohibit the Secretary of State from applying any new, currently nonexistent, unwritten rules to future petitions.

## II

## A

[1] The signature collectors argue that they have standing to seek such relief. Although the district court couched its

opinion in terms of mootness, its factual determinations support our independent conclusion to the contrary.[1] As the Supreme Court has explained,

> to satisfy Article III's standing requirements, [the plaintiffs] must show (1) [they have] suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Additionally, where, as here, the signature collectors seek declaratory and injunctive relief, they must demonstrate that they are "realistically threatened by a *repetition* of the violation." *Armstrong v. Davis*, 275 F.3d 849, 860-61 (9th Cir. 2001) (emphasis in original); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

These elements of standing must be supported in the same way as any other matter for which a plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice. However, at the trial stage, the factual predicate for standing upon which the plaintiffs rely, if controverted, "must be supported adequately by the evidence adduced at trial." *Id.*

---

[1]Mootness and standing are questions of law that we review *de novo*. *Porter v. Jones*, 319 F.3d 483, 489 (9th Cir. 2003).

1

**[2]** In this case, the trial court made factual findings indicating that the signature collectors failed to prove the factual predicate for the primary theory of standing described in their complaint, which alleged that the three petitions would likely fail to qualify for the ballot due to the Elections Division's application of unwritten rules for evaluating the circulator certifications. The district court found that the medical marijuana and forest petitions qualified for the ballot in spite of the Elections Division's removal of signature sheets for improper circulator certifications. Thus, the Secretary of State's allegedly unlawful conduct did not, in fact, cause the injury that the signature collectors for these two petitions expected.

**[3]** The district court also found that the Secretary of State's allegedly unlawful conduct had no impact on the term limits petition's failure to qualify for the ballot. The district court found that this petition garnered so few valid signatures that it would have failed to qualify *even if* the Elections Division had not removed any signature sheets for improper circulator certifications. Thus, there was no causal connection between the failure of the term limits petition to qualify for the ballot and the Secretary of State's allegedly unlawful conduct.

2

**[4]** Declining to challenge the district court's determination that the Secretary of State's allegedly unlawful actions had no impact on the success or failure of their petitions, the signature collectors argue that they nonetheless have standing to seek declaratory and injunctive relief under two alternate theories. They first assert that frustration with the Secretary of State's application of unwritten rules sapped their enthusiasm for engaging in the political process. These feelings of frustration stemming from the signature collectors' disagreement with the Secretary of State's actions, however, are not suffi-

ciently concrete to constitute the "injury-in-fact" required for Article III standing. *See Lewis v. Continental Bank Corp*., 494 U.S. 472, 479 (1990) (explaining that a plaintiff "must establish that [he] has a specific live grievance . . . and not just an abstract disagreemen[t] over the constitutionality of [an official act]"); *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.").

**[5]** Second, the signature collectors contend that the Elections Division's exclusion of some of their signature sheets for improper circulator certifications caused them to incur expenses for gathering extra signatures in their ultimately successful effort to place the proposed medical marijuana and forest initiatives on the ballot and their ultimately unsuccessful effort to place the proposed term limits initiative on the ballot. These alleged expenses cannot confer standing for purposes of declaratory and injunctive relief, however, because the signature collectors have not demonstrated a likelihood that, in the absence of declaratory and injunctive relief, the Secretary will apply unwritten rules for circulator certifications in the future. *See City of Los Angeles*, 461 U.S. at 109; *Armstrong v. Davis*, 275 F.3d at 860-61. The signature collectors concede, as they must, that the standards the Elections Division uses to evaluate circulator certifications are now codified into administrative law. Accordingly, the possibility that the Secretary of State will, in the future, apply unwritten rules to reject petition signature sheets for circulator certifications is hypothetical and too speculative to confer standing. *Friends of the Earth, Inc.*, 528 U.S. at 180-81.

### III

For the foregoing reasons, the district court's dismissal is

AFFIRMED.