R & R PARTNERS, INC., a Nevada corporation, and Las Vegas Convention and Visitors Authority, a Nevada governmental agency, Plaintiffs,

v.

Dorothy TOVAR, an individual, and Adrenaline Sports, Inc., a California corporation, Defendants.

No. 03:04CV00145LRH (PAL).

United States District Court,
D. Nevada.

Aug. 10, 2006.

C. James Georgeson, Georgeson Angaran, Chtd., Reno, NV, Douglas L. Hendricks, Gregory P. Dresser, Yoshiko Inoue, Morrison & Foerster LLP, San Francisco, CA, John Desmond, Jones Vargas, Reno, NV, Kevin J. Byrne, Schiff Hardin L.L.P., Chicago, IL, for Plaintiffs.

Daniel N. Ballard, Bullivant Houser Bailey PC, Sacramento, CA, Barry L. Breslow, Robison, Belaustegui, Sharp & Low, Reno, NV, Michelle L. Samonek, Glenn W. Peterson, McDonough Holland & Allen PC, Sacramento, CA, for Defendants.

## ORDER

HICKS, District Judge.

Presently before the court are cross-motions for summary judgment. Plaintiffs R & R Partners, Inc. ("R & R") and the Las Vegas Convention and Visitors Authority ("LVCVA") filed a Motion for Summary Judgment (# 77 [1]) on September 15, 2005. Defendants Dorothy Tovar ("Tovar") and Adrenaline Sports, Inc. ("Adrenaline") have filed an opposition (# 91), and Plaintiffs subsequently replied (# 96). Defendants filed their Motion for Summary Judgment (# 119) on February 28, 2006. Plaintiffs filed an opposition (# 128) and Defendants replied (# 129).

Also before the court are various evidentiary objections (## 94, 100, 101, 126) and requests for judicial notice (## 78, 92, 124, 127).

### I. Factual Background

This is a trademark infringement action arising out of Defendants' use of the phrase "What Happens in Vegas Stays in Vegas" ("WHIVSIV"). In 2002, R & R began developing an advertising and promotional campaign, on behalf of LVCVA, to promote Las Vegas as a travel destination. (Pls.' Mot. for Summ. J. (# 77) at 2.) This led to the "Vegas Stories" campaign and the trademark "What Happens Here Stays Here" ("WHHSH").[2] *Id.* The

---

1. Refers to the court's docket number.

2. It is undisputed that LVCVA owns a valid trademark.

ensuing advertising campaign consisted of television commercials and print advertisements. *Id.* Television commercials utilizing the trademark were first broadcast on December 27, 2002. *Id.* The thirty-second television commercials consisted of a twenty-five second vignette followed by a three-second scene of a black background with the phrase WHHSH. *Id.* The commercial would end with a display of the "Only Vegas" mark. *Id.*

In January of 2003, the National Football League refused to air one of LVCVA's commercials during the Super Bowl. *Id.* This refusal generated publicity for Las Vegas and the WHHSH trademark. *Id.* In addition to this publicity, LVCVA expended significant resources on its advertising campaign. *Id.* By the end of 2004, the commercials were broadcast 4,847 times. *Id.* at 3. In addition, it is estimated that more than one hundred and fifty million people viewed full-page print ads contained in various nationally distributed magazines. *Id.* Finally, LVCVA ran "screenvision advertisements" from the "Vegas Stories" campaign at movie theaters in top marketing areas. *Id.* LVCVA's advertising campaign proved to be successful and generated a large number of visitors to Las Vegas. *Id.* at 4.

LVCVA obtained a Nevada state registration for the WHHSH mark on July 11, 2003, "to promote Las Vegas as a destination for consumers." (Pls.' Mot. for Summ. J. (# 77) at 5.) On February 19, 2004, LVCVA registered the mark with the Nevada Secretary of State for "prints & publications to promote Las Vegas as a destination for consumers" and for "clothing." *Id.* LVCVA assigned the WHHSH mark to R & R on November 9, 2004. *Id.*

Prior to the filing of this action, LVCVA orally transferred ownership of the WHHSH mark to R & R. (Pls.'s Opp'n to Defs.' Mot. for Summ. J. (# 128) at 3.) On November 9, 2004, LVCVA and R & R executed a written trademark assignment and license-back agreement that was stated to be effective as of January 1, 2004. *Id.*

Tovar began using the WHIVSIV mark on April 17, 2003, through Adrenaline. (Mot. for Summ. J (# 77) at 5.) Tovar also sells the WHIVSIV line of clothes on various web sites. *Id.* On April 22, 2003, Tovar obtained a Nevada state registration for the WHIVSIV mark for clothing. *Id.* Tovar is also the owner of two federal registrations for the WHIVSIV mark and several pending applications for use of the mark that were filed between February 28, 2003, and July 19, 2004. (Mot. for Summ. J (# 77) at 5.)

## II. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir.2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for

the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986). *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal.2001). For those issues where the moving party will not have the burden of proof at trial, the movant must point out to the court "that there is an absence of evidence to support the non-moving party's case." *Catrett*, 477 U.S. at 325, 106 S.Ct. 2548.

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir.2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252, 106 S.Ct. 2505.

### III. Discussion

On July 25, 2005, Plaintiffs filed a complaint alleging trademark infringement, unfair competition, deceptive trade practices, dilution, and cancellation of registrations. The parties have subsequently filed cross-motions for summary judgment. Throughout the discussion that follows, the court will refer to both motions simulta-neously, utilizing the appropriate burdens of proof.

### A. Standing

As a threshold matter, Defendants argue that neither R & R nor LVCVA has standing to bring the present suit. Defendants characterize the assignment and license-back agreement between LVCVA and R & R as an invalid assignment in gross. Defendants further argue that LVCVA does not have standing because it has admitted that it does not own the WHHSH mark. In response, LVCVA first argues that the assignment to R & R was a valid assignment that contained the goodwill associated with the mark. Alternatively, LVCVA asserts that if there is some defect invalidating the assignment then LVCVA is the valid owner of the mark.

 In order to satisfy the constitutional requirement of standing, a plaintiff must show (1) that he has suffered from an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury is fairly traceable to the challenged action of the defendant, and (3) that it is likely that the injury will be redressed by a favorable decision. *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir.2006) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). At issue in the case at bar is whether R & R or LVCVA has suffered an injury in fact. If neither party is the owner of the trademark, no injury in fact has occurred. *See id.* "The burden of showing that there is standing rests on the shoulders of the party asserting it." *Smelt v. County of Orange*, 447 F.3d 673, 682 (9th Cir.2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).

"The law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated." *Mister Donut of America, Inc., v. Mr. Donut, Inc.,* 418 F.2d 838, 842 (9th Cir.1969). In other words, an assignment of the mark must be accompanied by "the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark." 15 U.S.C. § 1060(a)(1). Therefore, "when one speaks of the transfer of good will that accompanies a mark, one necessarily means the transfer of the portion of the business or service with which the mark is associated." *Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank,* 696 F.2d 1371, 1375 (Fed.Cir.1982); *see also Mr. Donut, Inc.,* 418 F.2d at 842. In determining the validity of an assignment, "[t]he fundamental policy of consumer protection must always be kept in mind." 2 McCarthy on Trademarks and Unfair Competition § 18:4 (4th ed.2006).

On November 9, 2004, LVCVA purported to assign to R & R for one dollar, "[a]ll right, title, and interest held by LVCVA in and to the Marks" along with "[t]he goodwill of the business connected with the use of and symbolized by the Marks ...." (Decl. of Rossi Ralenkotter (# 85), Trademark Assignment and License Back Agreement, Ex. A at 1.A, 1.B.) However, "[t]he mere fact that the assignment document recites that good will was transferred to the assignee does not control the validity of the assignment." 2 McCarthy on Trademarks § 18.24.

In determining whether good will has been transferred, the focus is on "whether the assignee's use in fact so uses the mark as to continue the reality symbolized by the assigned mark." *Id.* Here, LVCVA argues that the assignment was not one in gross because the assignment did not change the product associated with the WHHSH Mark as LVCVA continued with the use of the mark. The court disagrees.

LVCVA is a Nevada governmental agency and is responsible for advertising Las Vegas as a travel destination. (Am.Compl.(# 56) ¶ 3, 6.) LVCVA used the WHHSH mark in connection with its advertising. Therefore, the good will associated with the WHHSH mark is that associated with the business of tourism in Las Vegas. R & R has provided no evidence that any business associated with the WHHSH mark was transferred along with the trademark itself. Rather, R & R's interest in the WHHSH mark appears to be only that of creating an effective advertising campaign for its customer. Furthermore, the assignment of the WHHSH mark does not continue the reality symbolized by the assigned mark. R & R has provided no evidence that it has any interest in promoting Las Vegas as a tourist destination. The only practical effect of the purported assignment was to allow R & R to police the trademark by assigning the trademark to R & R. Therefore, the court finds that the assignment was an invalid assignment in gross as there is no evidence that any business or portion thereof (good will) was transferred along with the WHHSH mark. Because the assignment was invalid, R & R has not suffered an injury in fact and does not have standing to maintain this action. *See Beauty Time, Inc. v. VU Skin Systems, Inc.,* 118 F.3d 140, 150 (3d Cir.1997). However, the court finds that LVCVA does have standing to bring this action. Because the alleged assignment was invalid, all rights in the WHHSH mark remained with LVCVA. *See* 2 McCarthy on Trademarks § 18.20. As such, LVCVA has sufficiently alleged an injury in fact and has standing to bring this action.

## B. Unclean Hands

██ Defendants argue that LVCVA should not be permitted to pursue this action because it has unclean hands. Specifically, Defendants argue that LVCVA has unclean hands because it "fraudulently procured a Nevada state WHHSH trademark registration for clothing," it sought permission to join this action even though it had assigned the WHHSH mark to R & R, and that it selectively enforced its mark. (Defs.' Mot. for Summ. J. (# 119) at 14.) LVCVA responds by arguing that "none of the conduct Defendants claim as a basis for their unclean hands defense amounts to fraud or deceit." (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 128) at 25.)

 " 'Unclean hands is a defense to a Lanham Act infringement suit.' " *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir.1987)). "Trademark law's unclean hands defense springs from the rationale that 'it is essential that the plaintiff should not in his trademark, or in his advertisements and business, be himself guilty of any false or misleading representation.' " *Id.* (quoting *Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516, 528, 23 S.Ct. 161, 47 L.Ed. 282 (1903)). "To make out an unclean hands defense, a trademark defendant 'must demonstrate that the plaintiff's conduct is inequitable and the conduct relates to the subject matter of its claims.' " *Id.* (quoting *Fuddruckers, Inc.*, 826 F.2d at 847). "To show that a trademark plaintiff's conduct is inequitable, defendant must show that plaintiff used the trademark to deceive consumers." *Id.* (citing *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir.1989)).

In this instance, the court finds the allegations raised by Defendants insufficient to support a defense of unclean hands. None of the allegations relate to the subject matter of LVCVA's claims nor have the defendants shown that LVCVA used the WHHSH trademark to deceive consumers. At the time LVCVA joined in this action, the court was aware of Defendants' challenge to the assignment of the WHHSH mark from LVCVA to R & R. (July 25, 2005, Order (# 54) at 5.) With respect to LVCVA's enforcement and protection of its WHHSH trademark, Defendants have not shown that its conduct is inequitable or that it relates to the subject matter of this case. Nothing regarding the choice to pursue an action against Defendants shows that LVCVA itself has deceived consumers. Finally, the Nevada state registration cannot be grounds for showing unclean hands as it is not part of the subject matter of the claims in this action. For these reasons, Defendants' unclean-hands defense fails.

## C. Trademark Infringement

██ LVCVA's principal cause of action alleges trademark infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). " 'The Lanham Act provides national protection of trademarks in order to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.' " *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir.2002) (quoting *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). Section 43(a) of the Act provides for civil liability against "[a]ny person who, on or in connection with any goods or services, uses in commerce any word, term, name, symbol, or device,... which ... is likely to cause confusion, as to the origin, sponsorship, or approval of his or her goods, services or commercial activities by another person...." 15 U.S.C. § 1125(a)(1).

■ "The test for 'likelihood of confusion' requires the factfinder to determine whether a 'reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks.'" *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir.2005) (quoting *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir.1998)).

■ In determining whether there is a likelihood of confusion, the Ninth Circuit has looked to the following eight non-exclusive factors: strength of the mark; proximity of the goods; similarity of the marks; evidence of actual confusion; marketing channels used; types of goods and the degree of care likely to be exercised by the purchaser; defendant's intent in selecting the mark; and likelihood of expansion of the product lines. *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979) (citing *Sleeper Lounge Co. v. Bell Mfg. Co.*, 253 F.2d 720, 722 (9th Cir.1958)). However, this list of factors is not a "score-card" and the relative importance of each factor is case specific. *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir.2002). The likelihood of confusion inquiry is inherently factual and usually requires a full record. *Id.* at 902; *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir.2001).

### 1. Strength of the Mark

■ "The scope of the trademark protection that we give marks depends upon the strength of the mark, with stronger marks receiving greater protection than weak ones." *Entrepreneur Media, Inc.*, 279 F.3d at 1141 (citations omitted). Because a strong mark is "inherently distinctive," consumers are more likely to be confused by another's use of the same or similar mark. *Id.* (citations omitted). The "'strength' of the trademark is evaluated in terms of its concep-tual strength and commercial strength." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir.2000) (citing 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 11:83, at 11–143 (rev. ed.1999)). "Marks can be conceptually classified along a spectrum of increasing inherent distinctiveness." *Id.* (citing *Brookfield Commc'n, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir.1999)). "From weakest to strongest, marks are categorized as generic, descriptive, suggestive, and arbitrary or fanciful." *Id.*

■ The parties agree that the WHHSH mark is suggestive, although Plaintiffs argue that the mark could also be arbitrary. "[S]uggestive marks are presumptively weak." *Brookfield Commc'n*, 174 F.3d at 1058 (9th Cir.1999) (citing *Nutri/System, Inc. v. Con–Stan Indus., Inc.*, 809 F.2d 601, 605 (9th Cir. 1987)). However, "advertising expenditures can transform a suggestive mark into a strong mark, where, for example, that mark has achieved actual marketplace recognition." *Id.* (citing *Nutri/System, Inc.*, 809 F.2d at 605; *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 743–44 (2d Cir.1998)).

Here, it is undisputed that LVCVA has expended significant resources on advertisements containing the WHHSH mark. In fact, Tovar has conceded that "the WHHSH phrase has achieved nationwide recognition." (Defs.' Reply to Pls.' Opp'n to Mot. for Summ. J. (# 129) at 13.) However, Tovar asserts that part of that recognition is due to the public's exposure to the many variations of the WHHSH phrase. *Id.* Nonetheless, the undisputed facts show that LVCVA has expended great efforts in promoting Las Vegas as a tourist destination with the WHHSH mark and that the mark itself has achieved nationwide recognition. In light of these two undisputed

facts, the court finds that the WHHSH mark is a strong mark.

### 2. Proximity of the Goods

■■■■ If goods are closely related, consumers are more likely to be confused by the use of similar marks and will mistakenly assume there is an association between the producers of the goods when no such association exists. *Entrepreneur Media, Inc.,* 279 F.3d at 1147; *Sleekcraft Boats,* 599 F.2d at 350. "The more likely the public is to make such an association, the less similarity in the marks is requisite to a finding of likelihood of confusion." *Sleekcraft Boats,* 599 F.2d at 350 (citing *American Steel Foundries v. Robertson,* 269 U.S. 372, 382, 46 S.Ct. 160, 70 L.Ed. 317 (1926)). "Thus, less similarity between the marks will suffice when the goods are complementary, the products are sold to the same class of purchasers, or the goods are similar in use and function." *Id.* (citations omitted). "Related goods are those 'products which would be reasonably thought by the buying public to come from the same source if sold under the same mark.'" *Sleekcraft Boats,* 599 F.2d at 348 n. 10 (quoting *Standard Brands, Inc. v. Smidler,* 151 F.2d 34, 37 (2d Cir.1945)).

In the case at bar, LVCVA argues that the reasonably prudent consumer would believe that it is affiliated with Tovar's shirts and apparel because the sale of tourism goes hand in hand with the sale of merchandise. Defendants, on the other hand, argue that it is "silly" to believe that "consumers of intimate women's apparel will likely believe that the City of Las Vegas either sells intimate women's apparel or sponsors the sale of those goods." (Defs.' Mot. for Summ. J. (# 119) at 26.)

In examining the record, the undisputed evidence indicates that tourism and the sale of merchandise complement each other. (Decl. of Rob Dondero (# 80) ¶ 25); (Decl. of Terry Jicinsky (# 83) ¶ 11);

(Decl. Of Yoshiko Inoue (# 79), Ex. V.) Thus, consumers of tourism in Las Vegas are likely to purchase merchandise to commemorate their trips to Las Vegas. As such, the court finds that tourism in Las Vegas and Defendant's clothing are related such that this factor favors finding a likelihood of confusion.

### 3. Similarity of the Marks

■■■■ A likelihood of confusion becomes more likely as the similarity between two marks becomes greater. *Entrepreneur Media, Inc.,* 279 F.3d at 1144 (citing *GoTo.com, Inc.,* 202 F.3d at 1206). The Ninth Circuit has developed "three axioms that apply to the 'similarity' analysis: 1) Marks should be considered in their entirety and as they appear in the marketplace; 2) Similarity is best adjudged by appearance, sound, and meaning; and, 3) Similarities weigh more heavily than differences." *Id.*

In the present dispute, LVCVA claims that the words "Here" and "In Vegas" are interchangeable because its advertisements promote tourism in Las Vegas. In opposition, Defendants argue that the two marks are not similar because their use of the WHIVSIV mark differs from LVCVA's use of the WHHSH mark.

The court has examined the two marks as they appear in the marketplace and finds that the marks are similar. *See* (Decl. of Rob Dondero (# 80), Exs. A, C); (Decl. of Daniel N. Ballard (# 93), Ex. 33.) As an important initial consideration, it is undisputed that the two marks have a similar, if not identical, meaning. (Pls.' Mot. for Summ. J. (# 77) at 14); (Defs.' Mot. for Summ. J. (# 119) at 26.) Both marks convey the message that certain things should not be discussed elsewhere.

Furthermore, although there are differences in the sound of the two marks based on the use of the words "In Vegas" in

place of "Here," those differences are insignificant in light of the use of the two marks in the marketplace. The WHHSH mark is accompanied by the "Only Vegas" mark. Thus, the mark, as it appears in the marketplace, leaves no room for doubt that it is referring to Las Vegas. Finally, the appearance of the two marks is similar. Both marks appear in the same format: "What happens ___ stays ___." Therefore, the fact that the WHIVSIV mark appears more prominently on Defendants' clothing than on LVCVA's advertising is insufficient to show that the marks are not similar. Consumers who purchase Defendants' clothing are not likely to stop and consider the difference between "Here" and "In Vegas" before deciding to purchase such clothing. For these reasons, the court finds that the similarity of the marks weighs in favor of finding a likelihood of confusion.

### 4. Evidence of Actual Confusion

"Evidence that use of two marks has already led to confusion is persuasive proof that future confusion is likely." *Sleekcraft Boats*, 599 F.2d at 352 (citing *Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir.1963)). As evidence of actual confusion, LVCVA points to declarations of various individuals who were allegedly confused along with a survey indicating that one-third of participants believed that Defendants' shirts were authorized or sponsored by Las Vegas or some official representative of the city, like LVCVA. By contrast, Defendants argue that the evidence of actual confusion is inadmissible hearsay and that the survey evidence is inadmissible because the survey is flawed.

First, LVCVA points to the declaration of Rosemary Vassiliadis. Mrs. Vassiliadis is the Deputy Director of Aviation at the McCarran International Airport in Las Vegas and is married to the Chief Executive Officer of R & R. (Decl. of Rosemary A. Vassiliadis (# 82) ¶ 2.) In her declaration,

Mrs. Vassiliadis states as follows: "In 2003, I told [sic] from an employee at the Airport about clothing bearing the [WHHSH] Mark. I believed that the clothing was either made by or sponsored by [LVCVA]." *Id.* ¶ 3. Defendants object to this evidence arguing that Mrs. Vassiliadis lacks personal knowledge because she did not actually see Defendants' clothing. Tovar also objects to the statement of the airport employee as hearsay.

The court finds that the statements by Mrs. Vassiliadis are admissible. The statement made by the airport employee is not hearsay because it is not being offered in evidence to prove the truth of the matter asserted. *See* Fed. R.Evid. 801(c). The statement is being offered to show the effect it had on Mrs. Vassiliadis. Furthermore, Mrs. Vassiliadis does have personal knowledge of the phrase WHIVSIV. *See* Fed.R.Evid. 602. The fact that Mrs. Vassiliadis has no knowledge of Defendants' clothing goes to the weight given to her statements concerning confusion over the phrase WHIVSIV. Mrs. Vassiliadis's testimony states that she believed LVCVA was involved with the phrase WHIVSIV. As such, her testimony is admissible as evidence of actual confusion.

Next, LVCVA points to the declaration of William Vassiliadis, Chief Executive Officer of R & R. (Decl. of William Vassiliadis (# 84) ¶ 1.) Paragraph six of Mr. Vassiliadis's declaration reads as follows:

In September 2003, I learned from my wife, Rosemary Vassiliadis, that items of clothing bearing the [WHHSH] Mark were being sold at various stores at Las Vegas' McCarran International Airport. She asked me whether LVCVA or R & R was the source of the clothing. The same thing happened with a client about the sale of the WHIVSIV shirts at Man-

dalay Bay. I advised both my wife and the client that neither LVCVA nor R & R sold shirts.

*Id.* ¶ 6. Defendants object to this evidence arguing that the statement lacks foundation concerning who the client is and other information explaining the circumstances of the alleged discussion. LVCVA responds by arguing that Mr. Vassiliadis's position as Chief Executive Officer and his "extensive work" on the WHHSH campaign is adequate foundation to establish that he would receive this type of communication.

The court agrees with LVCVA that a proper foundation has been laid in order to show the effect the statements may have had on Mr. Vassiliadis and his possible belief that people are actually confused. However, the court further finds that evidence as to what the client may have said is inadmissible hearsay for purposes of proving that the client was actually confused.

■■■ The next declaration offered to show actual confusion, to which Defendants object, is the declaration of Rob Dondero, Executive Vice President of R & R. (Decl. of Rob Dondero (# 80) ¶ 2.) According to Mr. Dondero, he was "asked on multiple occasions whether LVCVA was the source of the clothing being sold at the airport and other locations." *Id.* ¶ 24. Defendants object to this statement for lack of foundation and as inadmissible hearsay. In response, LVCVA agrees that the statements are hearsay, but argues that they fall under the present sense impression hearsay exception. The court disagrees.

Rule 803(1) of the Federal Rules of Evidence provides that "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is not excluded by the hearsay rule. Fed.R.Evid. 803(1). Mr. Dondero's

statement is not a present sense impression because it does not describe or explain an event, but rather relays the statement of an out of court declarant for purposes of proving that the out of court declarant was actually confused. Therefore, the court finds that Mr. Dondero's statement is inadmissible hearsay.

Finally, two declarations have been offered to show actual confusion to which Defendants have not specifically objected. First, Mike Sloan, an executive of the Mandalay Resort Group, has declared that shortly after the WHHSH campaign had commenced, he "began seeing people wearing T-shirts with a slogan sufficiently similar to [WHHSH]" and that he believed the T-shirts were associated with LVCVA'a advertising campaign. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 128), Decl. of Mike Sloan ¶¶ 1–3.) Second, James Rathner, owner of the Mr. Boxer store in the McCarran International Airport, declared that he associated the WHIVSIV mark with LVCVA. (Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 128), Decl. of James Rathner ¶¶ 1–4.)

■■■ In addition to these declarations, LVCVA has offered a survey indicating that one out of three participants believed that Defendants' shirts were associated with the City of Las Vegas. (Decl. of Yoshiko Inoue (# 79), A Study of Likelihood of Confusion, Ex. G.) Defendants argue that the survey is flawed, thus inadmissible under Rule 702 of the Federal Rules of Evidence, for the following reasons: 1) the expert who conducted the survey had never performed a survey with a geographically descriptive phrase; 2) the expert had only conducted one survey related to clothing; 3) the expert's other clothing survey was a "mall-type survey" while this was an internet survey and the expert did not identify any journals or other articles discussing the reliability of

internet surveys; 4) "[t]he expert improperly challenged the control group with a t-shirt affixed with the slogan 'Have a nice day' instead of one that contained a geographically descriptive phrase analogous to [WHIVSIV];" and 5) the expert did not consider the positive association with "Have a nice day" significant enough to require subtraction from the positive association with WHIVSIV. (Tovar's Opp'n to Pls.' Mot. for Summ. J. (# 91) at 18.)

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. Determining the admissibility of scientific evidence requires the court to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The Ninth Circuit has previously stated that "surveys in trademark cases are to be admitted as long as they are conducted according to accepted principles." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1292 (9th Cir.1992).

The court has considered the survey in light of Rule 702 and the factors outlined in *Daubert* and concludes that the survey is admissible. Attached to the survey is the "biographical material" of the expert, Kenneth A. Hollander. (Decl. of Yoshiko Inoue (# 79), A Study of Likelihood of Confusion, Ex. G.) Mr. Hollander has extensive experience as a lecturer and researcher. *See id.* In fact, the "biographical material" indicates that Mr. Hollander has conducted or critiqued over eighty intellectual property surveys. *Id.* Moreover, the survey itself indicates that it was conducted in accordance with generally accepted standards of procedure in the field. *Id.* at 4. In light of the qualifications of Mr. Hollander, the court finds that the survey is the product of reliable principles and methods, based on sufficient data applied reliably to the facts. Defendants have provided no evidence to indicate an actual flaw exists in the methodology of the survey. Without evidentiary support, the court finds no merit in the arguments presented by Defendants. For the foregoing reasons, the court finds that there is evidence of actual confusion, which supports a finding of likelihood of confusion.

### 5. Marketing Channels Used

"Convergent marketing channels increase the likelihood of confusion." *Sleekcraft Boats*, 599 F.2d at 353. LVCVA argues that the marketing channels are the same because they are aimed at the same target audience. Defendants argue that the marketing channels are different because LVCVA advertises primarily outside of Las Vegas while Defendants' marketing channel consists of Las Vegas retail shops.

Although it is true that LVCVA and Defendants target the same audience, it is undisputed that they do so through different marketing channels. As previously mentioned, LVCVA markets tourism in Las Vegas through television and print advertisement. On the record, the only evidence of Defendants' marketing consists of internet web sites and the actual stores that sell Defendants' clothing. (Decl. of Yoshiko Inoue (# 79), Defendant Dorothy Tovar's Resp. to Pl.'s First Set of Interrogatories, Ex. B at 4–5.)

### 6. Types of Goods and Purchaser Care

Plaintiffs argue that consumers will exercise little care in purchasing Tovar's

products as the clothing is priced at around twenty dollars. Defendants on the other hand argue that the relevant consumer is the commercial clothing buyer who purchases clothes for resale and states that buyers exercise a high degree of care.

■ The standard used to analyze a likelihood of confusion relates to the typical buyer exercising ordinary caution. *Sleekcraft Boats,* 599 F.2d at 353. *Sleekcraft Boats* described the standard as follows:

> Although the wholly indifferent may be excluded, the standard includes the ignorant and the credulous. When the buyer has expertise in the field, a higher standard is proper though it will not preclude a finding that confusion is likely. Similarly, when the goods are expensive, the buyer can be expected to exercise greater care in his purchases; again, though, confusion may still be likely.

*Id.* (citations omitted).

In the case sub judice, neither party has offered any evidence indicating the degree of care that would be exercised by the ordinary purchaser. For this reason, the court will view this factor as neutral in the ultimate analysis as to whether there is a likelihood of confusion.

### 7. Intent

■ "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Sleekcraft Boats,* 599 F.2d at 354. LVCVA argues that evidence of Tovar's intent to benefit from its advertising campaign is shown from the fact that she adopted the WHIVSIV mark shortly after LVCVA began using the WHHSH mark. (Pls.' Mot. for Summ. J. (# 77) at 17.) Furthermore,

LVCVA points out that "there is no denying ... that Tovar saw the Vegas Stories commercial before she used or made appreciable use of her WHIVSIV slogan on clothing." (Pls.' Opp' to Defs.' Mot. for Summ. J. (# 128) at 10.) Defendants, on the other hand, argue that there is no evidence that Tovar knew the WHHSH mark existed before she filed her trademark application or that she intentionally adopted WHIVSIV in order to capitalize on the good will of the WHHSH mark. (Defs.' Mot. for Summ. J. (# 119) at 27.)

In examining the evidence presented on this issue, the court finds this factor inconclusive in the overall analysis. Although the undisputed evidence shows that Tovar adopted the WHIVSIV phrase shortly after LVCVA began using the WHHSH mark, the declaration of Tovar indicates that she had not heard of the phrase WHHSH before she filed her trademark applications. (Decl. of Dorothy Tovar (# 121) ¶¶ 5–6.) Because Tovar's intent in adopting the WHIVSIV mark is disputed, this factor of the *Sleekcraft* analysis is neutral in determining the issue of likelihood of confusion at this stage in the proceedings.

### 8. Likelihood of Expansion of Product Lines

■ "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Sleekcraft Boats,* 599 F.2d at 354. However, the parties agree that the likelihood of expansion of products lines is irrelevant under the facts of this case. (Pls.' Mot. for Summ. J. (# 77) at 20); (Defs.' Mot. for Summ. J. (# 119) at 27.) There-

fore, the final *Sleekcraft* factor is neutral to the resolution of this case.

### 9. Conclusion of Sleekcraft Analysis

 The court has examined the entire record in this case and concludes that there is no genuine issue of material fact that Defendants' use of the phrase WHIV-SIV is likely to confuse reasonably prudent consumers. During the February 14, 2005, oral argument, the parties acknowledged that the facts in this case are undisputed. An analysis of those undisputed facts shows that the WHHSH mark is a strong mark and that tourism and clothing are complementary goods. When it is further considered that the two marks are similar and have caused actual confusion, the only conclusion to be made is that there is a likelihood of confusion such that Defendants' use of the WHIVSIV mark infringes upon LVCVA's WHHSH mark. In light of the evidence, the presumption that Defendants' trademark is valid has been overcome. *See Talking Rain Beverage Co., Inc. v. S. Beach Beverage Co.*, 349 F.3d 601, 603 (9th Cir.2003). As such, summary judgment will be granted in favor of LVCVA[3] and Defendants' federal trademarks will be canceled.

IT IS THEREFORE ORDERED that R & R is hereby DISMISSED from this action for lack of standing.

IT IS FURTHER ORDERED that LVCVA's Motion for Summary Judgment (# 77) is hereby GRANTED.

IT IS FURTHER ORDERED that, pursuant to 15 U.S.C. §§ 1119 and 1052(d), Federal Registration Nos. 2,930,998 and 2,986,162 are hereby CANCELLED. In addition, Tovar does not have the right to registration of the WHIVSIV mark on the following trademark applications: Serial Nos. 78453025, 78231585, 78311277, 78398294, and 78398277. The clerk of the court shall send a certified copy of this order to the Commissioner of the Patent and Trademark Office.

IT IS FURTHER ORDERED that the parties shall have thirty (30) days from the entry of this order to file points and authorities as to whether this court has the authority to order the cancellation of the Nevada and California registrations of the WHIVSIV mark. Each party shall then have ten (10) days to reply.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (# 119) is hereby DENIED.

IT IS FURTHER ORDERED that the various requests for judicial notice (## 78, 92, 124, 127), to the extent the evidence contained therein is not referenced in this order, are hereby DENIED pursuant to Rule 403 of the Federal Rules of Evidence as not relevant to the court's disposition.

The Clerk of the Court shall enter Judgment accordingly.

IT IS SO ORDERED.

---

**3.** Because the court is granting summary judgement in favor of LVCVA with respect to the claim for infringement, the court will not address the dilution and fraud claims. *See* (Pls.' Reply in Support of Mot. for Summ. J. (# 96) at 17, 18.)